# Richmond.

## TORBERT V. ATLANTIC COAST LINE RAILROAD COMPANY.

### March 28, 1918.

1. FIRES—*Evidence—Engine Throwing out Sparks.*—In an action for damages by plaintiff for the destruction of his property by fire alleged to have been set out by sparks or coals dropped or thrown from one of the locomotive engines or trains of defendant, it was prejudicial error to refuse to allow the plaintiff, on examination in chief as a witness in his own behalf, to answer the following question: "State whether or not engines of the defendant * * * drawing freight trains southward * * * throw sparks and coals as they pass the point at which your property is located."

2. FIRES—*Evidence—Engine Throwing out Sparks—Case at Bar— Appeal and Error—Reversible Error.*—In the instant case the undisputed fact was, that the train of the defendant, from which plaintiff's evidence tended to show the fire originated, passed along by a shed between lines of box cars standing on each side of the main line track, which of itself, according to known physical laws, in the resistance given by such lines of box cars to the air displaced by the defendant's moving train, might have caused ample disturbance of the air to have carried sparks or coals, if thrown out by the engine of such train, the short distance of twenty-five feet from the engine to the debris on the side of the shed, where the fire originated according to the testimony for the plaintiff. Therefore, whether or not such engine in fact threw sparks and coals as it passed said locality was a material fact in the instant case, upon the plaintiff's theory of the origin of the fire. Hence, the error in excluding the circumstantial evidence referred to in the preceding headnote was plainly harmful error to the plaintiff and therefore reversible error.

3. INSTRUCTIONS—*Weight of Evidence.*—An instruction upon the subject of the weight and effect of the evidence must be carefully drawn so as not to invade the province of the jury under our procedure. Under that procedure they are the sole judges of the credibility of witnesses and of the weight to be given to the evidence in a case.

4. FIRES—*Instructions—Weight of Evidence.*—In an action for

damages by fire alleged to have been set out by a railroad, an instruction that the jury could not "presume from the happening of the fire that it was caused by the defendant. * * * In other words, it is incumbent upon the plaintiff to show how the fire occurred and the plaintiff cannot leave to the jury the determination of the question by conjecture, guess or random judgment or upon mere supposition," is erroneous. It is in effect an instruction to the jury that they could not, in the instant case, presume (*i. e.*, could not draw the inference of fact) from the happening of the fire, under the circumstances shown by the evidence for the plaintiff, that it was caused by the defendant. That was precisely such an inference of fact as the jury might have been warranted in drawing in the instant case, in view of the undisputed facts and of the evidence for the plaintiff.

5. FIRES—*Circumstantial Evidence—Presumption Based Upon Presumption.*—The fundamental error in the instruction set out in the preceding headnote is that an ordinary reader or juror would be apt to construe it to mean that a jury cannot draw an inference of fact from circumstantial evidence; that such an inference is a presumption based upon a presumption, which cannot serve as an intermediate fact from which (along with other circumstantial evidence) the jury may draw another inference of fact. The error of this position is pointed out by the Supreme Court of Appeals in the case of *C. & O. Ry. Co.* v. *Ware, ante,* page 246, 95 S. E. 183.

Error to a judgment of the Circuit Court of Norfolk county, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

This is an action for damages by the plaintiff in error (hereinafter referred to as plaintiff) against the defendant in error (hereinafter referred to as defendant) for the destruction of a shed and its contents of lumber, all owned by plaintiff, by fire alleged to have been set out between midnight and three o'clock a. m. of November 7, 1915, by sparks or coals dropped or thrown from one of the locomotive engines or trains of the defendant.

Certain evidence for plaintiff was excluded by the trial

court over the objection of the plaintiff; and a certain instruction was given by such court at the request of the defendant over the objection of the plaintiff.

## Undisputed Facts.

Plaintiff's wooden shed, containing lumber, with roof covered with metal, was located on the east side of defendant's railroad and immediately adjacent to its right of way. The side of the shed next to the railroad was about 136 feet long, and that side of it was closely weatherboarded with German siding, having no opening therein on the night of the fire. This weatherboarding came practically down to the ground. The eaves of the shed were about fourteen feet high, and about a foot higher than the tops of a line of box cars which were standing on a side track of defendant along by the shed at the time of the fire. The track of the main line of the defendant used by trains going south passed within twenty-five feet of such side of the shed. There was a space of about eighteen or twenty inches between the box cars on the said side track and the shed, with the usual open spaces between the ends of the box cars as they stood coupled together or end touching end on the side track. The shed was forty-six feet wide. It was not heated in any way and contained no electric wires. The ends and other side of the shed were not closely boarded up. No one could enter the shed from those ends or sides, but any one standing on the outside of such ends or side of the shed could look through openings in the boarding into the interior of the shed. The door of the shed, which was at its northeast end, was locked at the time of the fire. No one slept or stayed in the shed at night. The shed was on a lumber lot of considerable size which was enclosed partly by a solid board fence about six feet high, and partly by a wire fence some five feet high, with several strands of

barbed wires on top of it, and the gates or openings in the fence, and in another shed forming part of the enclosure, were locked at the close of business of plaintiff the night before the fire and were still locked at the time of the fire.

The fire in question originated either within the shed toward its northeast end and about midway inside of it, or on the outside of the weatherboarding of German siding next to defendant's railroad by catching afire next to the ground; and the fire was first discovered about 2:30 a. m. of November 7, 1915.

There was also a side track on the opposite side of defendant's main line from said shed on which a number of box cars were standing. Any train therefore passing along defendant's main line would, as it passed said shed, have run between two lines of box cars, which would have been very near to the passing train.

### THE MATERIAL CONFLICT IN THE EVIDENCE.

#### *Evidence for Defendant.*

The evidence for the defendant tended to show that the fire originated inside of the shed. That there was no dry grass, paper, etc., on defendant's right of way, heaped up against the weatherboarding of plaintiff's shed on that side of it, from which the fire could have been communicated to the shed, as plaintiff's witnesses testified. That there was no train of defendant which passed by the shed preceding the fire nearer than about 1:10 a. m. of the night of the fire. That at the time the fire originated, and shortly preceding, there was a slight wind blowing and that this was blowing from the shed towards the railroad. That the 1:10 a. m. train referred to was a freight train going south. That there was a very slight if any grade in the railroad main line track going south, so that there was no pulling of

any grade sufficient to cause any train going south to throw sparks.

### Evidence for Plaintiff.

The evidence for the plaintiff which was admitted by the trial court, tended to show that the fire originated on the outside of the shed by the weatherboarding or German siding next to defendant's railroad catching afire next to the ground, being communicated from dry grass, paper, etc., thrown and left there some time before by defendant's section hands, such debris extending from the ends of the ties of the side track aforesaid some eighteen or twenty inches in width to the weatherboarding of that side of the shed, and being heaped up several inches high against such weatherboarding of the shed. That a freight train of the defendant going south passed the shed about two o'clock a. m. of the night of the fire. That a short time after the fire originated there was absolutely no wind, but a dead calm in the locality of the shed, even on the west side of it, the direction from which the defendant claimed a wind was blowing; and the uncontroverted evidence is that at that time there was more wind in that vicinity than there had been for several hours next preceding. Hence the jury were warranted in finding, and therefore we must find it to be a fact that at the time of the origin of the fire there was no wind, but a dead calm, in the locality of the shed. That there was some grade in the railroad main line track going south over which said train passed; and the plaintiff would have introduced testimony to the effect that all freight trains going south did in fact throw sparks and coals as they passed said shed, but the trial court refused to allow the introduction of such proof before the jury, as is more particularly set out in the opinion below.

## THE INSTRUCTIONS.

There were but three instructions to the jury given by the trial judge, one as asked for by the plaintiff and two as asked for by the defendant, and they were as follows:

The following instruction was granted at the request of the plaintiff:

The court instructs the jury that if they believe from the evidence that the property of the plaintiff, mentioned in the declaration, was destroyed by fire and that such fire was caused by a spark or sparks, coal or coals, dropped or thrown from an engine of the defendant, or from an engine of the Southern Railway Company, using the tracks of the defendant, which passed near the plaintiff's said property on the 7th day of November, 1915, between the hours of 12, o'clock mid-" (some words omitted, being perhaps "night and 3 o'clock a.m.") which passed near the plaintiff's said property on the 7th they should find for the plaintiff. And if the jury shall find for the plaintiff, they should fix his damages at the value of the property destroyed, not exceeding the amount claimed in the declaration.

The two following instructions were granted at the request of the defendant:

"Defendant's Instruction No. 1. The court instructs the jury that the burden of proving that the fire complained of was caused by the engine of the defendant or by the engine of the Southern Railway Company, using the tracks of the defendant, rests upon the plaintiff and the plaintiff must prove by a preponderance of all the testimony that the fire was so caused. It is not sufficient for the plaintiff to show a mere probability that the fire was so caused. Nor can the jury presume from the happenings of the fire that it was caused by the defendant, or by the engine of the Southern Railway Company, using the tracks of the defendant. In other words, it is encumbent upon the plain-

tiff to show how the fire occurred and the plaintiff cannot leave to the jury the determination of the question by conjecture, guess or random judgment or upon mere supposition.

"Defendant's Instruction No. 2. The court instructs the jury that in order to find for the plaintiff in this case they must believe from the greater weight of the evidence that the fire was started by a railroad engine and if the jury are unable to determine from the preponderance of the evidence what caused the fire, they should find a verdict for the defendant."

There was a verdict of the jury and judgment entered thereon for the defendant, and the plaintiff brings error.

*Rumble & Campe,* for the plaintiff in error.

*Wm. B. McIlwaine, Bernard Mann, Williams, Tunstall & Thom,* and *H. Lawrence Brooke,* for the defendant in error.

Sims, J., after making the foregoing statement, delivered the following opinion of the court:

1. On the trial of the case, on the examination in chief of the plaintiff as a witness in his own behalf, the plaintiff was asked the following question: "Mr. Torbert, state whether or not engines of the defendant * * * drawing freight trains southward * * * throw sparks and coals as they pass the point at which your property is located."

On objection to the question the jury were withdrawn.

In the absence of the jury the witness stated that his answer to the question would be, "They do."

While the jury were absent, the witness was further asked: "* * * if all the engines drawing freight trains going * * * (southward) * * * labor heavily at that point?" The witness answered: "They do."

Thereupon the court refused to allow the witness to answer the question first above quoted.

This ruling on the part of the trial court was error. *N. & W. Ry. Co.* v. *Spates, ante,* page 69, 94 S. E. 195.

That this error was prejudicial to the plaintiff is manifest when we consider that, in view of his other evidence in the case, the jury were entitled to consider the fact that sparks or coals were thrown by the engine, under the decisions of this court. *Atlantic, etc., R. Co.* v. *Watkins,* 104 Va. 154, 51 S. E. 172; *C. & O. Ry. Co.* v. *May,* 120 Va. 790, 92 S. E. 801; *C. & O. Ry. Co.* v. *Ware, ante,* page 246, 95 S. E. 183. It is true that in the cases last cited there was a wind blowing from the defendant's railroad towards the place of origin of the fire at the time the fire originated; and in the instant case the testimony for the plaintiff was that there was no wind at the time of the origin of the fire. But the undisputed fact in the instant case is, that the train of the defendant, from which plaintiff's evidence tended to show the fire originated, passed along by the shed between the lines of box cars standing on each side of the main line track, which of itself, according to known physical laws, in the resistance given by such lines of box cars to the air displaced by the defendant's moving train, might have caused ample disturbance of the air to have carried sparks or coals, if thrown out by the engine of such train, the short distance of twenty-five feet from the engine to the debris on the side of the shed, where the fire originated according to the testimony for the plaintiff. Therefore, whether or not such engine in fact threw sparks and coals as it passed said locality was a material fact in the instant case, upon the plaintiff's theory of the origin of the fire. Hence, said error in excluding the circumstantial evidence, which would have been obtained by the admission of the evidence which was excluded, was plainly harmful error to the plaintiff and therefore reversible error.

87

There was no direct evidence in the case to the effect that the engine in question threw sparks or coals in the locality of the fire. The excluded evidence aforesaid was itself, it is true, only circumstantial evidence on the question of fact whether sparks and coals were so thrown, but it was nearer in degree of proof to that inference of fact which the plaintiff sought to have the jury draw as to the sparks and coals being in fact thrown, than the evidence which the plaintiff had in the record in the absence of such excluded testimony. That is to say, without such excluded testimony, the plaintiff was compelled to rely solely on the other testimony of his witnesses, contradicted by the testimony of witnesses for the defendant, that there was such a grade in the main line track of defendant which the engine of defendant drawing the train in question had to pull, that this pulling on such up-grade caused such engine to throw sparks and coals. By said exclusion of testimony and by the giving of such instruction No. 1 for defendant, the plaintiff was prevented from relying upon a fact which was a material link in his chain of evidence.

2. Instruction No. 1, given as asked by defendant, is upon the subject of the weight and the effect of the evidence. An instruction on that subject must be carefully drawn so as not to invade the province of the jury under our procedure. Under that procedure they are the sole judges of the credibility of witnesses and of the weight to be given to the evidence in a case.

That part of the instruction which it is necessary for us to consider in the instant case is as follows:

" * * * Nor can the jury presume from the happening of the fire that it was caused by the defendant * * * In other words, it is incumbent upon the plaintiff to show how the fire occurred and the plaintiff cannot leave to the jury the determination of the question by conjecture, guess or random judgment or upon mere supposition."

This was in effect an instruction to the jury that they could not, in the instant case, presume (*i. e.*, could not draw the inference of fact) from the happening of the fire, under the circumstances shown by the evidence for the plaintiff, that it was caused by the defendant. As we have above noted, under former decisions of this court, that was precisely such an inference of fact as the jury might have been warranted in drawing in the instant case, in view of the undisputed facts and of the evidence for the plaintiff.

The fundamental error in the instruction is that an ordinary reader or person would be apt to construe it to mean that a jury cannot draw an inference of fact from circumstantial evidence; that such an inference is a presumption based upon a presumption, which cannot serve as an intermediate fact from which (along with other circumstantial evidence) the jury may draw another inference of fact. The error of such position is pointed out by this court in the case of *C. & O. Ry. Co.* v. *Ware, supra.*

The result of the instruction under consideration in the instant case (on that feature of it which concerned what, if any, inference the jury might draw with respect to the vital question of fact of whether the engine of the defendant, pointed to by the plaintiff's evidence as the cause of the fire, did or did not throw sparks and coals as it passed the plaintiff's property), was to indicate to the jury that they could not draw such inference of fact, as to sparks or coals, from the circumstantial evidence which had been admitted in the case—namely, that the jury could not draw such an inference of fact from the circumstantial evidence that such engine was pulling a train on the up-grade, shown by the evidence for plaintiff.

As indicated in the *Spates Case, supra,* the giving of such an instruction as that under consideration, is in its nature misleading to a jury, where the case is one in which there is evidence of sufficient probative value to justify submit-

ting the issue to the jury. In such a case the plaintiff is not left to rely on "conjecture, guess or random judgment, or upon mere supposition." Compare *C. & O. Ry. Co.* v. *Catlett, ante,* page 232, 94 S. E. 934.

It was error, therefore, for the trial court to give said instruction, and such error plainly appears from the record in the instant case to have been prejudicial to the plaintiff, and hence the giving of it was reversible error.

There are other assignments of error relating to the exclusion of testimony and the refusal of an instruction offered by plaintiff, all bearing on the question of the existence of negligence on the part of the defendant as the cause of the setting out of the fire; but as there was no evidence tending to show any other cause for the fire attributable to the defendant than the sparks or coals thrown from one of its engines, and as the sole instruction given at the request of the plaintiff submitted the case to the jury on the question of whether the fire was caused by sparks or coals as aforesaid (which amounted to submitting the case to the jury under the Featherston act, under which the negligence of the defendant is not in issue), it is deemed unnecessary to consider such assignments of error.

For the foregoing reason, the judgment complained of must be set aside and annulled, and a new trial will be granted to the plaintiff, to be had, if he is so advised, not in conflict with the views expressed in this opinion.

*Reversed.*