**GENERAL MOTORS CORPORATION v. JOHNSON.**

**SAME v. KING.**

**Nos. 5087, 5088.**

Circuit Court of Appeals, Fourth Circuit.

July 27, 1943.

F. L. Fuller, Jr., of Durham, N. C. (R. P. Reade and William B. Umstead, both of Durham, N. C., on the brief), for appellant.

Robert A. Freeman, of Dobson, N. C., for appellee Melba King.

Wilson Barber, of Mt. Airy, N.C. (H. O. Woltz, of Mt. Airy, N. C., on the brief), for appellee Mrs. Farest Johnson.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

These are actions brought in the District Court of the United States for the Middle District of North Carolina, at Winston-Salem, in July, 1942, by the appellees Mrs. Farest Johnson, administratrix of the estate of Franklin J. Diamond, deceased, and Melba King, administratrix of the estate of Ores King, deceased, here referred to as the plaintiffs, against the appellant, General Motors Corporation, here referred to as the defendant, a Delaware Corporation.

The object of the actions was to recover damages for the alleged wrongful death of Diamond and King who were killed in an accident in West Virginia, in July, 1941. By agreement the two cases were heard together and in November, 1942, a trial was had before a jury. At the conclusion of the plaintiffs' evidence a motion was made on behalf of the defendant for a directed verdict, which motion was denied by the trial judge. Again at the conclusion of all the evidence a motion for a directed verdict was renewed and denied. The jury returned a verdict in the sum of $7,500 in favor of each of the plaintiffs. Upon this verdict judgments were entered and the defendant has appealed.

A number of errors were alleged as to the admission of certain evidence and as to the rejection of certain other evidence, in the course of the trial, and error is charged by the defendant in the refusal of the court to direct a verdict in its behalf.

King was driving a truck manufactured by the defendant belonging to Farest Johnson and used by the said Johnson in his lumber business. The truck, with a load of lumber, driven by the said King, who was accompanied by Diamond (both King and Diamond being employees of Johnson, the owner of the truck), was proceeding down a steep incline between the towns of Bluefield and Welch, West Virginia, traveling in the direction of Welch. The truck was being operated about the business of its owner, Farest Johnson. It is admitted that the truck was manufactured by the defendant and there is no denial of of the contention that it was owned by Johnson, and that Diamond and King were his employees and were about his business at the time of the accident.

While the truck was proceeding as aforesaid, it got out of control and crashed into a stone building near where a road leading to Bramwell, West Virginia, cuts off from the Bluefield-Welch road. As a result of the collision with the building, the plaintiffs' intestates were killed.

The truck manufactured by the defendant was purchased new on July 5, 1941, and the wreck occurred on July 16, 1941. The truck had been driven about 1,400 miles and the driver was familiar with the highway on which he was traveling. The truck was a so-called ton and a half model and was loaded with 5,000 feet of part green, part dry lumber. After the wreck, there was no evidence found of faulty brakes, steering mechanism, or gears. All tires were found intact after the wreck. The first person to arrive at the scene of the wreck (within two or three minutes) found both boys in the truck dead.

The right rear wheel and axle housing (consisting of the dual wheels, spring, hub, and right axle housing all in one complete unit) was found severed from the rest of the truck and resting between the front axle and the rear axle, and about three feet forward to where it should have been on the truck, had it not been detached. When the wreck was examined, after the load of lumber had been removed, and the right rear assembly which had become separated from the rest of the truck had been removed, it was found that 4″ of the end of the axle housing on the outside, which fitted into the bell housing, and the inside of the bell housing, which formerly held the right axle housing, had a shiny, nickel-like brightness, in contrast to the color of the other metal, and showed evidence of recent wear by friction with other metal. There were found to be eight rivets which went through the ends of both the bell housing and the axle housing and all rivets were found to have been shorn and worn smooth and bright, like the ends of the axle housing and the inside of the bell housing, as described above.

There was evidence to the effect that the axle housing fitted into a sleeve or an opening in the bell or transmission housing and that when manufactured it was fitted together with a "press" fit of from seven to fourteen tons; that the axle housing should have had a larger diameter than the sleeve opening in the bell or transmission housing into which it was fitted, necessitating the "press" fit referred to, and when thus fitted under pressure they formed one piece with no clearance at all. It was found at the time of the wreck that the two connections fitted very loosely and that upon measuring were found to have a play of .0011″.

Immediately after the wreck it was found that the brake tube securely anchored on each side of the housings next to both of the wheels had been severed. It was testified that when the housings separated the hydraulic brake tube would necessarily be broken because the tubing was rigid. This had the effect of destroying the usefulness of the hydraulic brakes.

There was also evidence to the effect that immediately after the wreck it was found that portions of the wooden bed on the truck immediately over the rear wheels had been burned and that the burning had been done from the bed coming in contact with the rear wheels and that this showed that the load of lumber had gotten down to and was touching the rear wheels. The burn was deeper over the right wheel than over the left wheel.

It is contended on behalf of the defendant that there was no direct evidence as to the faulty construction of the truck and that the verdict of the jury was the result of mere conjecture. The defendant

also contended that the truck was over-loaded.

■ An examination of the record does not disclose any error made by the trial judge in his rulings as to the admission or rejection of evidence. We do not consider it necessary to discuss the points raised in detail. Some of the witnesses examined on behalf of the plaintiffs merely stated facts as they found them, as to the condition of the wrecked truck. The alleged defective parts were shown to the jury and it is our opinion that there was substantial evidence, which, if believed by the jury, was sufficient to prove that the construction of the truck was faulty. It was shown that the axle housing which should have been a little bit larger than the opening into the differential housing was in fact a little bit smaller.

There was no substantial proof that the truck was over-loaded.

The defendant relies on the following cases to support its contention that the verdict was necessarily the result of guess or conjecture on the part of the jury. Chicago, Milwaukee & St. Paul R. R. v. Coogan as Special Administratrix, etc., 271 U.S. 472, 46 S.Ct. 564, 70 L.Ed. 1041; Pennsylvania Railroad Company v. Chamberlain, Admrx., etc., 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819; Thonnesen v. Montgomery Ward & Company, D.C., 33 F.Supp. 81; Hodges v. Kimball et al., 4 Cir., 104 F. 745; Davlin v. Ford, 6 Cir., 20 F.2d 317 and Kalinowski v. Ryerson et al., 242 App.Div. 43, 272 N.Y.S. 759. A study of these cases shows a different state of facts from those proven here. In none of them was there any such direct and positive proof as to defective construction as was presented in the instant case, where there was more than a mere scintilla of evidence as to the faulty construction.

■ The common law rules of negligence prevail in West Virginia. Mahaffey v. Lumber Co., 61 W.Va. 571, 56 S.E. 893, 8 L.R.A.,N.S. 1263; Smith v Parkersburg Co-Operative Ass'n, 48 W.Va. 232, 37 S.E. 645; Wellman v. Fordson Coal Co., 105 W.Va. 463, 143 S.E. 160.

The plaintiffs rely on the following cases: Heckel v. Ford Motor Co., 101 N.J.L. 385, 125 A. 242, 39 A.L.R. 989; MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, Ann.Cas.1916C, 440; Ritz v. Packard Motor Car Co., 261 App.Div. 908, 25 N.Y.S.2d 213; Jones v. Raney Chevrolet Co., 213 N.C. 775, 197 S.E. 757; Hudson v. Moonier, 8 Cir., 94 F.2d 132.

■ The over-whelming weight of authority is to the effect that the manufacturer of a truck, like the one here in question, owes a duty to the public, irrespective of contract, to use reasonable care in its manufacture and to make reasonable inspection of the construction in the plant where the truck was manufactured.

It seems clear, from the evidence, that either reasonable care in the construction would have avoided the defect or reasonable care in the inspection of the truck would have disclosed the condition that evidently existed.

There was ample evidence to support the verdict of the jury and there was no error in the trial of the case. The judgments of the court below are accordingly affirmed.

Affirmed.