# Richmond

STARR WHITLOW ROBEY v. RICHMOND COCA-COLA BOTTLING
WORKS, INCORPORATED.

May 7, 1951.

Record No. 3773.

Present, All the Justices.

The opinion states the case.

*Allen, Allen, Allen & Allen,* for the plaintiff in error.

*John G. May, Jr., Robert Lewis Young* and *Ernest G. Garrett, Jr.,* for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

On July 6, 1948, Mrs. Starr Whitlow Robey, sometimes hereinafter referred to as the plaintiff, purchased six bottles of Coca-Cola from Hilton E. Burton and Catherine Burton, who conducted a retail grocery store under the name of Burton's Market, in the city of Richmond. At the time of the purchase the Coca-Cola was in the original pasteboard carton in which it had been sold and delivered to Burton's Market by Richmond Coca-Cola Bottling Works, Inc. The carton is designed to hold six bottles in an upright position and is equipped with a wire handle to facilitate its carriage by hand.

While Mrs. Robey was walking across the street and carrying the carton by the handle, the end or bottom of the carton broke, three bottles of Coca-Cola fell to the pavement and burst, and her foot was cut by flying glass. While her injuries were at first thought to be slight, complications developed and serious results followed.

To recover damages for her injuries Mrs. Robey instituted an action of trespass on the case against both Richmond Coca-Cola Bottling Works, Inc., and the proprietors of the retail store. The declaration charged the defendants both with a breach of their warranty of and representation as to the safety of the carton, and their negligence "in the selection, inspection and use of the said pasteboard carton and in using a carton which was structurally weak, defective, improper, dangerous and incapable of containing the said bottles of Coca-Cola therein." At the trial, however, the plaintiff abandoned the first of the two

alleged grounds of liability and relied solely upon her allegations of negligence.

Upon the conclusion of the plaintiff's evidence a motion to strike was sustained and a verdict and judgment for the defendants followed. The trial court took the view that there was no proof that the defendants, or any of them, had been guilty of negligence which was the proximate cause of the accident.

On the present writ of error the plaintiff does not press her claim against the Burtons, but she seeks a reversal of the judgment upon the asserted ground that the evidence was sufficient to warrant a finding by the jury that the Richmond Coca-Cola Bottling Works, Inc., was guilty of negligence which proximately caused her injury.

At the time of the incident Burton's Market maintained and operated what is commonly known as a self-service store, in which the customer selects his particular articles of merchandise, takes them to the cashier's counter, pays the purchase price therefor, and carries the articles from the store.

To further the merchandising of its product, the Richmond Coca-Cola Bottling Works, Inc., installed and maintained in the Burton store a wire stand in which the bottled drink was displayed for sale. The stand holds a number of cartons similar to that which has been described, each containing six bottles of the drink. An employee of the Bottling Works made daily deliveries of Coca-Cola to the Burton store in cases holding four cartons each. From these cases this employee took a sufficient number of cartons of bottles to replace those which had been sold or removed from the self-service wire stand. While the drink was placed in the self-service stand by the employee of the Bottling Works, the product was purchased by and became the property of the retail merchants by whom it was sold to their customers. The driver carried to defendant's plant empty bottles and cartons which customers had returned to the retailers.

On the day in question the plaintiff took a carton of bottles from the self-service stand and after having paid the cashier the purchase price of this and some other articles, left the store carrying the carton by the handle. While walking in a normal manner across the street from the store the accident occurred as related.

Mrs. Robey and another witness testified that the end of the

bottom of the carton separated or came loose, but neither undertook to say why this occurred. Mrs. Robey said that at the time she removed the carton from the rack she "noticed it wasn't a new carton" and had been previously used, but from her casual examination saw no damaged places or evidence of weakness in it.

Elwood Smith, an employee of Burton's Market, witnessed the accident and immediately went to Mrs. Robey's assistance. He found that the "end of the bottom" of the carton had broken, thereby permitting the bottles to fall out into the street. He said that the carton was "dirty," "worn," and plainly showed that it had been previously used.

Smith delivered the broken carton to Mr. Burton who in turn delivered it to H. A. Lowry, the then supervisor for the Richmond Coca-Cola Bottling Works, Inc., who investigated the accident.

Upon being examined as to the custom of his company to "re-use the cartons," Mr. Lowry said: "Yes, we do re-use cartons. When the cartons are returned to the plant they are examined and if they were found in any way damaged they are not re-used, but if in good shape after examination they are re-used."

Called upon to explain what disposition had been made of the particular carton here involved, Mr. Lowry testified that it was preserved at the plant for a while and was thrown away when it was believed that the plaintiff's injuries were superficial and there was no reason to foresee the eventual litigation.

On the other hand, Mrs. Robey testified that some six months after the accident she telephoned W. C. Wells, the then manager of the Bottling Works, and told him that her injuries had become serious, that an operation upon her foot would be necessary, and asked what disposition had been made of the carton. She said Mr. Wells told her that it was still in the possession of the defendant company.

Mr. Wells did not recall this conversation and said that in fact he did not remember having ever seen the carton.

The contention of the plaintiff is that notwithstanding the lack of privity of contract between her and the defendant, it owed her the duty of furnishing a carton in which the bottles could be carried safely, and that this obligation included the duty of making a reasonable inspection of cartons before re-using

them; that when she proved that the carton supplied to her was worn and damaged, it was for the jury to say whether the defendant had been negligent, that is, whether the defect was discoverable by the defendant in the exercise of ordinary care, or by reasonable inspection.

The defendant contends that the evidence on behalf of the plaintiff fails to make out a case against it for two reasons:

(1) Since the carton, the involved article, was not a food product and was not inherently dangerous, the defendant owed no duty to the plaintiff, with whom it had no contractual relations, with respect to the safety of the carton, and hence was not liable for damages for the injuries resulting from a defect therein in the absence of a showing that it had actual knowledge thereof.

(2) Even under the theory advanced by the plaintiff, the evidence adduced on her behalf fails to show that the defendant, or any of its employees, was guilty of any negligence which was the proximate cause of the accident.

There is a conflict of authority with respect to the principle first invoked by the defendant. The earlier authorities undoubtedly hold that, subject to certain exceptions such as in the case of food products and articles which are inherently dangerous, a manufacturer of an article owes no duty and is not liable to third persons, with whom it has no contractual relation, for negligence in the making, inspection, or packing of the article. 46 Am. Jur., Sales, § 812, p. 937; 65 C. J. S., Negligence, § 100-a, p. 618 *ff;* Cooley on Torts, 4th Ed., Vol. 3, § 498, p. 463 *ff.* See also, *dictum* to the same effect in *Norfolk Coca-Cola Bottling Works* v. *Krausse,* 162 Va. 107, 112, 173 S. E. 497.

Another well-recognized exception to the general rule is, "that a person who knowingly sells or furnishes an article, which by reason of defective construction or otherwise, is imminently dangerous to life or property, without notice or warning of the defect or danger, is liable to third persons who suffer therefrom." Cooley on Torts, 4th Ed., Vol. 3, § 498, p. 467.

But beginning with the decision in *MacPherson v. Buick Motor Co.* (1916), 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440, opinion by Judge Cardozo, the recent cases have enlarged the liability of a manufacturer to a remote vendee to include articles, not inherently dangerous and not dangerous when properly constructed and put to their intended

use, which if defectively constructed may reasonably be anticipated to cause injury to those properly using them.

In the *MacPherson Case*, the manufacturer of an automobile was held liable to a remote vendee for injuries caused by failure properly to inspect a wheel, bought from another maker, which had in it a discoverable defect that caused it to collapse. To the same effect see *General Motors Corp.* v. *Johnson*, C. C. A. 4, 137 F. (2d) 320, 322. The principle has been extended to many articles in common use. For a full discussion of the subject see *Carter* v. *Yardley & Co.* (1946), 319 Mass. 92, 64 N. E. (2d) 693, 164 A. L. R. 559, and annotation following that case.

In *Carter* v. *Yardley & Co., supra,* it was said that the extension of the principles enunciated in the *MacPherson Case* has "caused the exception to swallow the asserted general rule of non-liability, leaving nothing upon which that rule could operate." (64 N. E. (2d) at page 700.) Accordingly, the Massachusetts court in that case, in line with the great weight of authority, abandoned as "unsound" its former adherence to the rule which denied liability of the manufacturer of an article to the remote vendee because of lack of privity of contract. It based its conclusion upon the principle that liability in such cases does not rest on privity of contract between the parties to the action, but on the duty of every man so to use his own property as not to injure the persons or property of others. (64 N. E. (2d) at page 696.)

In the case before us it is not necessary that we decide whether the former or the modern rule should prevail in this jurisdiction. Assuming, but not deciding, that the lack of privity of contract between the plaintiff and the defendant here does not absolve the defendant from liability in the present tort action, the burden was on the plaintiff to prove that the defendant was guilty of negligence which was the proximate cause of the accident and of her injuries. We agree with the trial court that she has not borne this burden.

The gist of the plaintiff's case is that the carton was worn and defective from previous use when it left the defendant's possession and was placed in the Burton store; that such defect could or should have been discovered by a reasonable inspection before committing the carton to re-use, and that a proper inspection was not made.

The trouble with this argument is that it assumes the very

factors which the plaintiff was required to prove. There is no presumption that the carton was defective when it left the possession of the defendant, and no evidence that it was. Examined on the subject, Smith, the delivery boy in the store, testified that he did not know whether the carton was damaged or broken before it was placed in the store or while it was there. There is no other evidence on the subject.

While the evidence shows that the defendant's employee daily replaced the cartons which had been removed from the rack, there is no showing how long this particular carton had been there, or whether it had been damaged while there. Obviously it may have been damaged after it had been placed in the store, and was in the exclusive control of the retailers, by being mishandled by anyone who had easy access thereto.

As to the alleged lack of inspection, the only evidence on the subject, as has been said, is that all cartons were inspected by the defendant before re-use and only those found to be in good condition were re-employed. There was, of course, no duty on the defendant to inspect the carton after the bottled product had been sold and delivered to the retailers who thereafter had exclusive control of it until they sold it to the plaintiff.

The case of *Rockwell* v. *Queen City Bottling Co.*, 73 Ohio App. 42, 53 N. E. (2d) 528, is quite similar to the case at bar. In that case the plaintiff purchased a carton of bottled drink from a retail store and while carrying it to her car the carton collapsed, causing the bottles to fall out and break, she being injured by the flying glass. The negligence charged was that the carton collapsed due to the negligence of the defendant in failing to inspect or in using old cartons. Upon the concession in the opening statement that the cause of the breakage of the carton was unknown, the trial court directed a verdict for the defendant. In affirming the judgment the appellate court said what is quite applicable to the present case:

"Plaintiff alleges and offered to prove merely that defendant put the carton in circulation and the happening of its collapse, while out of the possession and beyond the control of defendant, mentioning no act or omission to act of defendant in connection therewith, and leaving to utter speculation and the limitless field of guess work as to what did or did not happen to the carton after being placed in the hands of the retailer. * * *" (53 N. E. (2d) at page 529.)

■ Neither is the present plaintiff's case strengthened by the failure of the defendant to preserve and produce at the trial the damaged carton. At best, an inspection of the carton would have added nothing to the verbal testimony adduced by the plaintiff that it was worn and damaged. It would have thrown no additional light on how or when the damage occurred.

The judgment is

*Affirmed.*