**PIERCE et al. v. FORD MOTOR CO. et al.**
**MAHONE v. FORD MOTOR CO.**

Nos. 6281, 6282.

United States Court of Appeals
Fourth Circuit.

Argued June 21, 1951.

Decided Aug. 10, 1951.

Ashby B. Allen and George E. Allen, Richmond, Va. (Callom B. Jones, and Allen, Allen, Allen & Allen, Richmond, Va., on the brief), for appellants.

Aubrey R. Bowles, Jr., Richmond, Va. (H. Armistead Boyd, and Bowles, Anderson & Boyd, Richmond, Va., on the brief), for appellee, Ford Motor Co.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

These are appeals in two personal injury cases in which summary judgments were entered for the defendant, Ford Motor Company. Plaintiffs in both cases sued for damages for injuries sustained when a new Ford automobile was wrecked as

the result of the blowing out of one of its tires which plaintiffs alleged was caused by faulty workmanship in the assembly of the turnbuckle or adjusting sleeve on the left front tie rod, and that this allowed the turnbuckle to move and throw the front wheels out of proper alignment. The summary judgements were granted on the pleadings, pretrial examinations and affidavits from which the learned judge below was of opinion that upon the facts so developed "any verdict in favor of the plaintiff would be based upon conjecture and speculation." The question as to the correctness of this ruling is presented by both appeals. The appeal in No. 6281 presents the additional question as to whether it was proper to allow the defendant to bring in the driver of the car as a third party defendant; that in No. 6282, the additional question as to whether plaintiff should be allowed to file an amended complaint.

We think it clear, not only that there are substantial issues of fact involved in the charge of negligence contained in the two cases, but also that, so far as can be judged from the pleadings, examinations and affidavits, they are issues that will have to be passed upon by a jury. It is admitted that the car was a new one, having been purchased by the husband of the plaintiff Mrs. Mahone less than two weeks before the accident, and that it had been driven less than 900 miles. It is also admitted that the blowing out of one of the front tires was the cause of the accident and that this was caused by the tire's being worn to the cloth as a result of the front wheels being out of proper alignment. There is evidence that this misalignment was caused by the turning of the turnbuckle or adjusting sleeve on the left front tie rod which was clamped in place by two bolts and self locking nuts; that the turnbuckle should be tight and when tight will not turn; that it, along with the nuts and bolts, was found to be loose immediately following the accident; and that this was the cause of the trouble. There was evidence, also, that the car had been driven only by Mrs. Mahone and her husband and that they had done nothing

which could have caused the turnbuckle to become loose or to turn; that there was no indication on the turnbuckle of the use of any such force upon it as would have been necessary to turn it if it had been tight; that there was no stripping of the threads of the nuts or bolts as a result of the movement; that this indicated that the turnbuckle was loose; and that a reasonable explanation of the occurrence was that the turnbuckle was negligently left loose when the car was turned out at the factory and that it was held in place by the paint which was applied to it and the tie rod until the movement of the car caused it to overcome the slight restraint thus afforded.

A fact strongly relied on by the defendant is that the car was examined by a mechanic of the dealer that sold the car before it was delivered to the purchaser, and that it was the duty of the mechanic to check the turnbuckle and see that it was tight and properly adjusted. This mechanic gave a pretrial deposition in which he testified that he had no recollection of checking this particular car, apart from the certificate which he signed, but that, when called upon to check a car, he was accustomed to examine the turnbuckles on the tie rods to see if they were tight, and, if not, to tighten them; and that from the certificate which he had signed he knew that he had checked this car and had either found the turnbuckle tight or had tightened it.

On the facts as thus developed we think that the issue as to the negligence of the defendant was clearly for the jury. Without invoking the res ipsa loquitur rule, we think the jury could well have found that the turnbuckle was loose when the car left the factory and that this was the cause of the wreck. That the turnbuckle might have been loosened by something that happened while the car was in the possession of Mrs. Mahone and her husband, is a matter for the jury's consideration; but, if the evidence of these persons is accepted by the jury, nothing could have happened while it was in their possession to explain the loosening of the turnbuckle if it had been properly tight-

ened. So far as the evidence as to inspection by the mechanic is concerned, the jury might believe that no proper inspection had been made by him. In a federal court, it is for the jury, not the judge, to say what evidence it will believe and what inferences or conclusions it will draw therefrom, even though it is susceptible of conflicting inferences. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520. As the rule is one involving the exercise of the judicial function, the state practice is not binding on the federal courts, but we note that this is the rule in Virginia also. See Barry v. Tyler, 171 Va. 381, 199 S.E. 496, 499; Torbert v. Atlantic Coast Line R. Co., 122 Va. 682, 95 S.E. 635. The rule of the federal courts is thus stated in Tennant v. Peoria & P. U. R. Co., supra: "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. Washington & Georgetown R. Co. v. McDade, 135 U.S. 554, 571, 572, 10 S.Ct. 1044, 1049, 34 L.Ed. 235; Tiller v. Atlantic Coast Line R. Co. supra, 318 U.S. [54] 68, 63 S.Ct. [444], 451, [87 L.Ed. 610], 143 A.L.R. 967; Bailey v. Central Vermont Ry., 319 U.S. 350, 353, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444. That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored." [321 U.S. 29, 64 S.Ct. 412.]

For cases similar to the one at bar, in that the contention as to the existence of negligence in the manufacture of a motor vehicle was based largely on the condition of some part of the vehicle after an accident and in that the case was held for the jury notwithstanding argument that a verdict on such evidence would be speculative, see General Motors Corp. v. Johnson, 4 Cir., 137 F.2d 320; Hupp Motor Car Corp. v. Wadsworth, 6 Cir., 113 F.2d 827.

It is argued that any negligence of the manufacturer in turning out a defective car is insulated by that of a mechanic who inspects it afterwards so that the latter will be deemed the proximate cause of any injury resulting from its defective condition; but this argument is entirely without merit. As said in Harper on Torts ch. 7 sec. 106, quoted in Foley v. Pittsburgh-Des Moines Co., 363 Pa. 1, 68 A.2d 517, 529: "A negligent defendant can not escape liability because of a failure on the part of some third person to perform an affirmative duty which, if properly performed, would have enabled the plaintiff to avoid the risk created by the defendant's negligence. The failure of the other to inspect adequately may make him liable to the party harmed, but it will not relieve the defendant whose negligence was responsible for the hazard in the first place."

As we pointed out in Atlantic Greyhound Corp. v. McDonald, 4 Cir., 125 F.2d 849, 852: "It is well settled under the law of Virginia that 'a cause, to be a superseding cause, must entirely supersede the operation of the negligence of the defendant, so that such cause alone, without the defendant's negligence contributing in the slightest degree thereto, in fact produced the injury'."

See also Standard Oil Co. v. Wakefield's Adm'r, infra; Chesapeake & O. R. Co. v. Crum, 140 Va. 333, 125 S.E. 301, 304; Jefferson Hospital v. Van Lear, 186 Va. 74, 41 S.E.2d 441.

It is equally clear, we think, that if there was negligence on the part of defendant in the manufacture of the car, it gave rise to liability under the law of Virginia. There may have been some question in days gone by as to the liability of a manufacturer of a complicated machine such as an automobile for negligence in manufacture resulting in injury to a user

of the machine; but little question remains since the opinion of Mr. Justice Cardozo in the leading case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, Ann.Cas.1916C, 440, 13 N.C.C.A. 1029. And we are not impressed with the argument that the doctrine of that case is not the law of Virginia merely because in the recent case of Robey v. Richmond Coca Cola Bottling Works, 192 Va. 192, 64 S.E.2d 723, 726, the Supreme Court of Appeals of that state assumed without deciding that its doctrine was applicable. The reasoning of the court clearly indicates its approval of the rule in the following passage of its opinion, where, with reference to the general rule that there is no liability on the part of a manufacturer to the user of an article in the absence of privity of contract, the court said:

"Another well-recognized exception to the general rule is, 'that a person who knowingly sells or furnishes an article, which by reason of defective construction or otherwise, is imminently dangerous to life or property, without notice or warning of the defect or danger, is liable to third persons who suffer therefrom.' Cooley on Torts, 4th Ed., Vol. 3, § 498, p. 467.

"But beginning with the decision in MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, Anno.Cas.1916C, 440, opinion by judge Cardozo, the recent cases have enlarged the liability of a manufacturer to a remote vendee to include articles, not inherently dangerous and not dangerous when properly constructed and put to their intended use, which if defectively constructed may reasonably be anticipated to cause injury to those properly using them.

"In the MacPherson Case, the manufacturer of an automobile was held liable to a remote vendee for injuries caused by failure properly to inspect a wheel, bought from another maker, which had in it a discoverable defect that caused it to collapse. To the same effect see General Motors Corp. v. Johnson, 4 Cir., 137 F.2d 320, 322. The principle has been extended to many articles in common use. For a full discussion of the subject see Carter v. Yardley & Co., 1946, 319 Mass. 92, 64 N.E.2d 693, 700, 164 A.L.R. 559, and annotation following that case.

"In Carter v. Yardley & Co., supra, it was said that the extension of the principles enunciated in the MacPherson case has 'caused the exception to swallow the asserted general rule of nonliability, leaving nothing upon which that rule could operate.' 64 N.E.2d at page 700. Accordingly, the Massachusetts court in that case, in line with the great weight of authority, abandoned as 'unsound' its former adherence to the rule which denied liability of the manufacturer of an article to the remote vendee because of lack of privity of contract. It based its conclusion upon the principle that liability in such cases does not rest on privity of contract between the parties to the action, but on the duty of every man so to use his own property as not to injure the persons or property of others. 64 N.E.2d at page 696".

Long before the decision in the MacPherson case the Supreme Court of Appeals of Virginia had laid down the general principle upon which that case and those following it are buttomed in Standard Oil Co. v. Wakefield's Adm'r, 102 Va. 824, 47 S.E. 830, 832, 66 L.R.A. 792, wherein the court said: "Where there has been negligence in the construction or preparation of the article sold or supplied—that is, where, under the circumstances, injuries to the other contracting party or third persons might reasonably have been anticipated as a result of defects or errors therein—the question of privity of contract seems wholly immaterial. The liability depends upon the rule of natural and proximate cause and contemplation of consequences."

The question was before this court in General Motors Corp. v. Johnson, 4 Cir., 137 F.2d 320, 322, wherein we said: "The over-whelming weight of authority is to the effect that the manufacturer of a truck, like the one here in question, owes a duty to the public, irrespective of contract, to use reasonable care in its manufacture

and to make reasonable inspection of the construction in the plant where the truck was manufactured."

The rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, does not require that we abstain from finding a development in the law of a state merely because the precise point has never been decided by its highest court. In the absence of such controlling decision, it is our duty to find the law of the state as best we can from other sources, and we have the right to assume, nothing else appearing, that it has not lagged behind other states in the development of its common law concepts and that the law prevailing within its jurisdiction is not contrary to the great weight of modern authority. See Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9. As was well said by the Court of Appeals of the 7th Circuit in Anderson v. Linton, 7 Cir., 178 F.2d 304, 308–309, where the liability of the manufacturer for the negligent construction of a trailer was involved, and there had been no decision on the point by the courts of Iowa, whose law was applicable: "* * as there are no controlling Iowa decisions on the precise question before us for decision, we feel that we should not attribute to Iowa a doctrine that has been repudiated by most jurisdictions; we feel justified in concluding that the Supreme Court of Iowa would today adopt the modern rule, which is well expressed in Restatement of the Law of Torts, Sec. 395: 'A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured.' See: General Motors Corp. v. Johnson, 4 Cir., 137 F.2d 320, where the court held that a motor truck manufacturer owes the public a duty irrespective of contract to use reasonable care in manufacture and to make reasonable inspection of construction."

From what we have said, it is clear that there were issues in the cases for a jury to decide, and it was error to enter summary judgments for defendant for that reason. It is only where it is perfectly clear that there are no issues in the case that a summary judgment is proper. Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of its being presented. We had occasion to deal with the undesirability of disposing of cases on motions for summary judgment where there was real controversy between the parties in the recent case of Stevens v. Howard D. Johnson Co., 4 Cir., 181 F.2d 390, 394, where we said: "It must not be forgotten that, in actions at law, trial by jury of disputed questions of fact is guaranteed by the Constitution, and that even questions of law arising in a case involving questions of fact can be more satisfactorily decided when the facts are fully before the court than is possible upon pleadings and affidavits. The motion for summary judgment, authorized by rule 56 Federal Rules of Civil Procedure, 28 U.S.C.A., which in effect legalizes the 'speaking' demurrer, has an important place * * * in preventing undue delays in the trial of actions to which there is no real defense; but it should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. See Westinghouse Electric Corp. v. Bulldog Electric Products Co., 4 Cir., 179 F.2d 139, 146; Wexler v. Maryland State Fair, 4 Cir., 164 F.2d 477. And this is true even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom. Paul E. Hawkinson Co. v. Dennis, 5 Cir., 166 F.2d 61;

Detsch & Co. v. American Products Co., 9 Cir., 152 F.2d 473; Furton v. City of Menasha, 7 Cir., 149 F.2d 945; Shea v. Second Nat. Bank, 76 U.S.App.D.C. 406, 133 F.2d 17, 22. As was said by Mr. Justice Jackson, speaking for the Supreme Court in Sartor v. Arkansas Nat. Gas Co., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967: 'Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try.'"

■ In No. 6281, Mrs. Pierce, who was riding in the wrecked automobile with Mrs. Mahone, sued defendant Ford Motor Company for damages on account of the personal injuries which she sustained. For the reasons above stated we think that there was error in entering judgment in favor of the defendant in her case. Her appeal, however, presents an additional question. Over her objection, defendant was allowed to bring Mrs. Mahone into the case as a third party defendant, although Mrs. Mahone was a citizen of the same state as Mrs. Pierce. In other words, the defendant is invoking the third-party practice to make Mrs. Pierce sue an alleged joint tort-feasor whom she does not wish to sue and whose presence would have defeated the jurisdiction of the court if she had been joined as a defendant originally. We do not think that the provisions of the statute requiring diversity of citizenship as a prerequisite of jurisdiction, or the rule that a plaintiff may at his election sue one joint tort-feasor without joining others, may be nullified in this way. See Barron & Holtzoff Federal Practice and Procedure vol. 1 p. 844; Weaver v. Marcus, 4 Cir., 165 F.2d 862, 175 A.L.R. 1305; Baltimore & O. R. Co. v. Saunders, 4 Cir., 159 F.2d 481, 484. In the case last cited we condemned the practice in the following language, which we think applicable here, viz.:

"If the B. & O.'s motion had been allowed, its effect would have been to convert plaintiff's action into one against the third party defendants as well as against the B. & O. to establish tort liability on the part of one or all of them. In such situation, it would have been incumbent on the court to align the parties to the action as so constituted for the purpose of determining jurisdiction. Cf. State Farm Mutual Automobile Ins. Co. v. Hugee, 4 Cir., 115 F.2d 298, 132 A.L.R. 188; Maryland Casualty Co. v. Boyle Construction Co., 4 Cir., 123 F.2d 558. There can be no question but that such joinder of defendants by plaintiff, on the filing of the original complaint, would have defeated the jurisdiction. Slate v. Hutcherson, 4 Cir., 15 F.2d 551. It is equally clear that the situation is no different merely because one of the defendants is brought into the case by subsequent motion. Friend v. Middle Atlantic Transportation Co., 2 Cir., 153 F.2d 778, 779. In the case last cited, Judge Clark, whose connection with the drafting of the Rules of Civil Procedure entitles his opinion to peculiar weight, thus stated and answered the question before us:

" 'May a defendant cause a third party to be brought into a federal civil action under Federal Rules of Civil Procedure, rule 14, 28 U.S.C.A. following section 723c, to answer, along with it, to the *plaintiff's* claim, where the plaintiff and such party are citizens of the same state and federal jurisdiction does not otherwise appear? That is the issue squarely presented here, and we think it must be answered in the negative. Notwithstanding the undoubted convenience of extensive joinder in cases such as this, we must observe the established boundaries of federal jurisdiction, which the rules do not enlarge. F.R. 82.'"

An additional question is raised in the appeal in No. 6282, with respect to the refusal of the District Judge to permit an amendment to the complaint so as to allege the entire damage arising from her injury including cost of hospitalization and medical expenses. It does not appear that the judge passed upon the motion; but when the case goes back he will doubtless allow such amendments as may be necessary to enable plaintiff to present her case fully in

accordance with section 55–36 of the Virginia Code and the decision in Floyd v. Miller, 190 Va. 303, 57 S.E.2d 114.

For the reasons stated the judgments in favor of defendant in both cases will be reversed and the case will be remanded for further proceedings not inconsistent herewith.

Reversed.