993 F.2d 1538
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
MID-AMERICAN WASTE SYSTEMS, INCORPORATED; Waste Placement
Professionals, Incorporated; Timothy J. Salopek;
Frederick L. Counts, Plaintiffs-Appellants,
v.
Carolyn WILLIAMS, individually and in her official capacity
as director of Citizens for Lee County, Defendant-Appellee,
and
CITIZENS FOR LEE COUNTY, INCORPORATED; Max Johnson, in his
official capacity as director of Citizens for Lee County,
Incorporated; J. Wayne Davis, in his official capacity as
director of Citizens for Lee County, Incorporated; Franklin
S. Weeks, in his official capacity as director of Citizens
for Lee County, Incorporated; Hubert B. Morrow, in his
official capacity as director of Citizens for Lee County,
Incorporated; Michael W. Banks; Dot Smith; Tina Smith, Defendants.
 No. 92-2188.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 31, 1993
May 18, 1993
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Dennis W. Shedd, District Judge. (CA-91-2142-3-19)
 Argued: Lewis Walter Tollison, III, Nelson, Mullins, Riley & Scarborough, Columbia, South Carolina, for Appellants.
 E. Meredith Manning, Robinson, McFadden & Moore, P.C., Columbia, South Carolina, for Appellee.
 On Brief: Belton T. Zeigler, SOUTH CAROLINA ELECTRIC AND GAS COMPANY, Columbia, South Carolina, for Appellee.
 D.S.C.
 REVERSED AND REMANDED.
 OPINION
 Before RUSSELL and LUTTIG, Circuit Judges, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Mid-American Waste Systems, Inc., Waste Placement Professionals, Inc., Timothy J. Salopek, and Frederick L. Counts appeal from an order of the federal district court for the District of South Carolina granting summary judgment to appellee Carolyn Williams on their claims of defamation and interference with a prospective contractual relationship. Because we conclude that the district court improperly decided genuine issues of material fact, we reverse.
 
 I.
 
 2
 Appellee Williams is the chairman of a corporation called Citizens of Lee County ("CLC"), which opposed the efforts of appellants, Mid-American Waste Systems, Inc. ("MAWS") and Waste Placement Professionals, Inc. ("WPP"), to build a landfill for Lee County, South Carolina. After MAWS contracted with Lee County to build the landfill, it began negotiations for a similar contract with the local government of Pueblo, Colorado. In July 1991, both the mayor and city manager of Pueblo received letters purportedly written by Carolyn Williams, referring to the "unscrupulous" and"divisive tactics" and " 'golden promises' " of MAWS, WPP, and two WPP employees-appellants Salopek and Counts. See J.A. at 51, 59. Attached to the letters were other documents, including a sheet with the typed words, "A Threat To Your Quality Of Life," and two pages of typed notes linking appellants to organized crime. See id. at 52-54. Each letter included a signature block for "Carolyn Williams, Chairperson," over which appeared a handwritten signature of a "Carolyn Williams." See id. at 51, 59.
 
 
 3
 Claiming defamation and interference with a prospective contractual relationship, appellants brought this diversity action against Williams. Williams moved for summary judgment, citing her own affidavit and deposition denying responsibility for the Pueblo letters and the depositions of two CLC members, Dot and Tina Smith, accepting responsibility. In a ruling from the bench, the district court granted Williams' motion, stating simply: "Just based on a review of the record and what is in the record, based on the fact that Tina and Dot Smith said they did it and Carolyn Williams did not do it, individually I grant summary judgment as to Carolyn Williams in her individual capacity." Id. at 412. This appeal followed.
 
 II.
 
 4
 Considering the evidence in the light most favorable to appellants, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), we conclude that summary judgment was inappropriate. Such resolution is warranted "[o]nly where it is 'perfectly clear that there are no issues in the case.' " Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985) (quoting Pierce v. Ford Motor Co., 190 F.2d 910, 915 (4th Cir.), cert. denied, 342 U.S. 887 (1951)). In opposing Williams' motion for summary judgment, moreover, appellants were "entitled 'to have the credibility of [their] evidence as forecast assumed, [their] version of all that is in dispute accepted, all internal conflicts in it resolved favorably to [them], the most favorable of possible alternative inferences from it drawn in [their] behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence as considered.' " Id. (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)).
 
 
 5
 Our review of the record reveals a genuine issue as to Williams' responsibility for the allegedly defamatory mailings. Appellants need prove only that Williams participated in, or authorized, the wrongful act. See Hunt v. Rabon, 275 S.C. 475, 272 S.E.2d 643, 644 (1980). The cover letters sent to the Pueblo mayor and city manager identified "Carolyn Williams, Chairperson" as their author and included the signed name, "Carolyn Williams." J.A. at 51, 59. Enclosed with the cover letters were typewritten attachments linking appellants to organized crime, which Williams conceded having personally prepared, in part "so someone could read [them]." Id. at 34. At least two witnesses testified that Williams, as CLC's chairman, would normally review mailings and make decisions about the distribution of materials. Id. at 95, 166, 195, 226. Indeed, Tina Smith acknowledged that she might have discussed with Williams sending the very material at issue in this litigation. Id. at 197.
 
 
 6
 As Williams notes, the two Smiths ultimately denied that she had any knowledge of the Pueblo mailings. See Appellee's Br. at 16-20. Their depositions, however, are replete with inconsistencies, by themselves and with each other, and raise significant credibility questions. For example, Dot Smith testified at first that she and her daughter undertook the Pueblo mailings in a group, with the participation of other CLC members whom she refused to name. See J.A. at 233, 242, 244. In a second deposition, however, she insisted that only she and her daughter were responsible for mailing the allegedly defamatory material to Pueblo. See id. at 376, 378. Similarly, Tina Smith changed her testimony from saying at first that the Pueblo mailings were a group decision and project, see, e.g., id. at 182-83, 193, to saying that only she and her mother were responsible. See id . at 327, 334. As Williams' counsel grudgingly conceded at argument, one could fairly infer from the Smiths' initial testimony that a"committee" was in part responsible for the mailings, that Williams herself was partially responsible for the mailings, given that she was a member of that "committee."
 
 
 7
 Likewise, Williams claims that she only learned that Salopek and Counts, on behalf of WPP, were "in fact" in Pueblo when Tina Smith told her so, on or about July 1, 1992-the date of the incriminating letter. See id. at 19. Tina, however, denied that she could have imparted that information and insisted that she had not known Salopek and Counts were in Pueblo. See id. at 320-25. Tina, moreover, claimed at first to have never spoken to anyone in Pueblo, see id. at 173, but then admitted having spoken to someone in the Pueblo mayor's office, see id. at 317.
 
 
 8
 Upon evaluating the demeanor of these witnesses during direct and cross-examination, a jury might ultimately resolve these inconsistencies to appellants' detriment. We cannot conclude, however, that no reasonable juror could resolve them in appellants' favor. Each cover letter featured Carolyn Williams' name and apparent signature. Attached to that letter were notes linking appellants to organized crime, notes that Carolyn Williams conceded having personally prepared. Her two subordinates, the Smiths, initially described the mailings in a way that could be understood as confirming Williams' participation, but then changed their testimony for no apparent reason. From this sequence of events and testimony, a rational trier of fact could conclude that Carolyn Williams had been an integral participant in, or at least had authorized, the mailings that gave rise to appellants' claims, and that the Smiths were attempting to conceal Williams' participation in those mailings. Accordingly, the judgment of the district court is reversed and the case remanded for trial.
 
 REVERSED AND REMANDED