# Staunton

## CITY OF NEW YORK INSURANCE COMPANY v. HOWARD GREENE.

September 6, 1944.

Record No. 2794.

Present, All the Justices.

The opinion states the case.

*Donald T. Stant, Bradley Roberts* and *Roby C. Thompson,* for the plaintiff in error.

*Dick B. Rouse, H. E. Widener* and *T. L. Hutton,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

The parties will be referred to as they were related in the trial court. The plaintiff, Howard Greene, sued the defendant, City of New York Insurance Company, for recovery on an insurance policy for the destruction by fire of his automobile. He lived in Bristol, Virginia, and conducted a newspaper route for the Bristol *Herald Courier,* in connection with the delivery of some mail sacks at Damascus, which was his point of destination. It was his habit to leave Bristol at 2 a. m., make his rounds, and return about 10 a. m. The

accident happened on Monday morning. He had had little sleep the previous Sunday, finding it difficult to sleep with guests in and out of the house throughout the day. On his route he found himself dozing off and on and when rounding a curve in the road where there was a sloping embankment some 10 feet high, the automobile went off through a wire fence, striking a telephone pole and landing on its side. He managed to get his mail sacks out and some of his papers which he carried up to the highway he had left. He was then near Damascus, and he sat there hoping that some one would come along and take him to his destination. He was a cripple. He could not right the car himself. Indeed, it could not be done with help that subsequently proffered aid. It was about daylight when the accident happened. Later two men named Widener who lived nearby came along, with a 12 year old boy, and a little later, Robert R. Preston, Jr. The former noticed some smoke and suggested getting the tires off. The plaintiff went to the back of the car for this purpose, but realized that he had left the keys in the ignition and frankly said that he did not intend taking any chance in getting any tire tools out of the car; that gas had escaped from the tank and filled the bowl of the fender to the extent of several gallons and that one of the men put his finger in it and said "it is gas" and he advised not getting too close to it, that it might explode. In a few minutes Preston appeared. His testimony was not convincing as to the attitude of the plaintiff. In answer to one question he said that Greene said the insurance company would object to anything being taken off of the automobile. Then he was asked this question:

"X9. Did Greene prevent you or anybody else, to your knowledge, from trying to take the car tires off or to save the automobile or do anything else they wanted to, to prevent that fire?

"A. No, sir."

Carl Mock was a witness introduced by the defendant who said that he left the scene of the car because he felt that it was dangerous to be near it.

A number of witnesses, including a physician, a police officer, and a deputy sheriff, testified as to the excellent reputation of the plaintiff as an upright, moral and a law-abiding citizen.

The conflicts in the testimony, and there are some, under the familiar rule, must be resolved in favor of the plaintiff.

The jury found a verdict in his favor which was confirmed by the trial court. The defendant issued to the plaintiff its automobile certificate of insurance—which is the precursor of what is known as "Master Policy" No. AC-1453 which contains the following clause:

"Protection of Salvage. In the event of any loss or damage, whether insured against hereunder or not, the assured shall protect the property from other or further loss or damage, and any such other or further loss or damage due directly or indirectly to the Assured's failure to protect shall not be recoverable under this policy. Any such act of the Assured or this Company or its agents in recovering, saving and preserving the property described herein, shall be considered as done for the benefit of all concerned and without prejudice to the rights of either party, and where the loss or damage suffered constitutes a claim under this policy, then all reasonable expenses thus incurred shall also constitute a claim under this policy, provided, however, that this Company shall not be responsible for the payment of a reward offered for the recovery of the insured property unless authorized by this Company."

The defense of the insurance company was that the plaintiff violated this clause of the policy in that he not only failed to protect the automobile from loss or damage, but directly contributed to it by doing nothing to save it from destruction by fire, himself, but actually prevented others from so doing. It pursued this attitude to the extent of having a criminal warrant issued against him which resulted in his being hailed before a grand jury which, however, declined to indict him, although Mr. Rauh, an adjuster for the company, was a witness before that tribunal.

The major question was one of fact. The witnesses, or some of them, were doubtless known to the jury. They were observed by them, their demeanor, character, manner, and personality were before them and measured by them. We have their verdict supported by the approval of a discreet and eminent judge. We cannot say that there is not credible evidence to support the verdict.

■ ■ The defense of the company brought into play the presumption of innocence in favor of the plaintiff and placed upon it the burden of proving its charge by clear and satisfactory proof. In the estimate of the jury and the court, it has not done so, with which we are in accord. In the case of *Virginia Fire, etc., Ins. Co.* v. *Hogue,* 105 Va. 355, 54 S. E. 8, the first Syllabus is as follows:

"In an action on a policy of insurance against fire, when the defendant relies on fraud, false swearing, or other unlawful act, to relieve him from liability on his contract, the burden of proof is on the defendant and he must establish his defense by clear and satisfactory proof—not proof beyond a reasonable doubt, nor a preponderance in the ordinary sense, but a preponderance of evidence sufficient to overcome the presumption of innocence of moral turpitude or crime. The preponderance rule continues to operate, but more evidence is required to constitute a preponderance than where this presumption does not exist."

We shall now consider the remaining assignments of error.

Plaintiff's instruction No. 1 is the subject of much criticism. We think that its vice is that it lacks clarity. It is difficult to know what its theory is. It allows a recovery for the plaintiff without taking account of the policy provision relied upon by the defendant. In other respects, it is somewhat confused. It is error but not prejudicial as other instructions cure its deficiencies. We see no objection to instruction No. 2 granted at the instance of the plaintiff. Instructions B and B-1 offered by the defendant and refused were properly refused. Instruction B misconceived the duty of the burden of proof and both instructions are argumentative and offend by selecting and emphasizing portions of the

evidence.   Instruction D presented by the defendant and refused was manifestly incorrect.   It told the jury to disregard the evidence of the plaintiff as to what he said the witness, Rauh, said to him as to the value of the car, etc.   Mr. Rauh was shown to be an expert on values and he assisted the plaintiff in making out his proofs of loss and he testified in that connection.   Of course it would have been improper to have, by an instruction, limited the testimony which was in the record and before the jury.   Instruction B-2 offered by the defendant is very like the other instructions designated by the same letter which we have already disposed of. It was likewise refused and we think properly so.

The third assignment of error is based upon the allegation that the verdict is excessive.   The evidence affords no basis for this.

The fourth assignment of error charges that the defendant's motion for a continuance should have been granted because of the absence of a material witness who was at the time out of the state. This was W. D. Widener who, it will be remembered, came to the scene of the accident with his son, Dexter Widener, and a 12-year-old boy, who was his grandson, and that was while Robert R. Preston was present.   The signed statement by Widener who was absent and which was witnessed by Rauh, contained at the bottom this statement by Preston:   "I have read the above statement and it is true.   Mr. Greene did not have much to say after I arrived, but there was no fire that I could see when I arrived."   The absent witness had been recognized to appear at the trial, but he was in West Virginia.   His son, Dexter Widener, was examined and it is true that he did not know all that his father knew, but Preston did and he was not interrogated as to it, and the boy 12 years old who knew what had transpired was not called as a witness.   Thus it appears that W. D. Widener's testimony would have been only cumulative.   We think the court was right in not sustaining the motion for a continuance.   It will be noted that the granting of continuances is largely a matter of judicial discretion.

The fifth assignment of error is based upon the refusal of the court to sustain a motion to declare a mistrial on account of a conversation which a juror was seen to have had with the plaintiff while the judge and the attorneys were in the judge's chambers. This juror was brought before the court and questioned about the incident. It appeared that the conversation was about a matter entirely foreign to the case and the thing was conceived in innocence. There is no merit in the assignment.

*Yellow Cab Corp.* v. *Henderson*, 178 Va. 207, 16 S. E. (2d) 389.

The sixth assignment of error is based upon a matter of pleading. The motion was to strike out plaintiff's so called special replication to a plea in abatement.

The court rightly held that the plea was in bar and not in abatement and that the special replication was to the said plea which, however, seems a little archaic in this day of "cutting out the details and getting to the point".

The judgment complained of is plainly right and·it is

*Affirmed.*