# 𝔖taunton

H. M. Gleason and Company, Incorporated v. International Harvester Company, A Foreign Corporation, and A. J. Richardson.

September 14, 1955.

Record No. 4402.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Paxson, Marshall & Smith,* for the plaintiff in error.

*Haw & Haw* and *Henry E. Belt,* for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

This is a motion by A. J. Richardson against H. M. Gleason and Company, Incorporated, International Harvester Company, and Dayton Steel Foundry Company to recover a judgment for damages in the sum of $1,224.33. The plaintiff charged the defendants both with the breach of their implied warranty that a coupling device, commonly called a fifth wheel, designed for use in fastening a trailer to a tractor, was reasonably fit for the purpose for which it was sold to him, and with negligence "in the selection, inspection and sale for use of the said fifth wheel," which caused an accident resulting in the damages alleged.

For the sake of brevity, A. J. Richardson will hereinafter be referred to as Richardson, the International Harvester Company as Harvester, H. M. Gleason and Company, Incorporated, as Gleason, and Dayton Steel Foundry Company as Dayton.

Grounds of defense to the action were filed by Harvester and Gleason, and a plea in abatement was filed by Dayton asserting that no valid service of process had been obtained upon it. The plea in abatement was sustained and the case proceeded to trial upon issue joined between Richardson and the two remaining defendants. Certain interrogatories and answers thereto were duly filed and, by consent of the parties, the case came on to be heard before the trial court, without a jury.

At the conclusion of the plaintiff's evidence, the trial court sustained the motion of Harvester to strike the evidence against it, to which action exception was taken by Richardson and Gleason. At the conclusion of all the evidence, the trial court entered judgment in favor of Richardson against Gleason, to which action the latter duly excepted. Gleason appealed and we granted this writ of error.

No cross-error has been assigned by Richardson. Gleason assigns error to the action of the trial court in striking the evidence as to Harvester, and in entering judgment against it (Gleason), as being "contrary to the law and without evidence" supporting it.

In its brief and argument, Gleason makes the three following contentions:

(1) That the evidence failed to show the fifth wheel in question was not reasonably fit for the purpose for which it was sold to be used;

(2) That the evidence did not show that any of the employees of Gleason were guilty of negligence which proximately caused the damage sustained by Richardson; and,

(3) That the liability of Harvester to Richardson rests upon the same legal ground as that applicable to it, Gleason.

In view of the judgment of the trial court, the evidence will be stated in the light most favorable to Richardson and Harvester.

Richardson is a farmer and transporter of freight. In his transportation business, he hauls milk and feed principally, employing in such use five tractors and trailers. He has been buying trucks and farm machinery from Gleason for many years, and Gleason was familiar with the business in which he was engaged.

In April, 1953, Richardson ordered from Gleason an "International" truck of the type commonly called a tractor, manufactured by Harvester, and used for hauling trailers. At the same time he instructed Gleason to install a fifth wheel on the tractor. The fifth wheel is described as the device which, when mounted upon a tractor, provides the connection and coupling of a trailer to the tractor. It is secured to the frame of the tractor and presents a large circular flat area upon which the forward portion of the attached trailer may pivot. The coupling is made by inserting a "pin" on the trailer into a slot of the fifth wheel, containing a catch or locking device designed to securely hold the attached trailer. In ordering the fifth wheel, Richardson did not specify the make or type desired, nor did Gleason request him to specify it. Gleason obtained from the Richmond branch office of Harvester a fifth wheel, manufactured by the Dayton Steel Foundry Company, and installed it by bolting and welding it on the frame of the purchased tractor.

Gleason is an independent dealer, selling machinery, trucks and tractors at its place of business in Charlottesville, Virginia. It is not an agent or representative of Harvester.

Dayton is an independent manufacturer of fifth wheels.

Harvester is a manufacturer of farm machinery and equipment, including trucks and tractors. It maintains a branch office at Rich-

mond, Virginia, through which it sells its products to independent dealers. It also carries in stock for sale to dealers products and articles manufactured by other companies. Among such articles carried in stock are several types of fifth wheels, one of which is known as the "Dayton Fifth Wheel," manufactured by Dayton. Harvester did not know that the "International" truck had been sold to Richardson by Gleason, and it did not know that Richardson had ordered a fifth wheel to be installed on it. All it knew was that Gleason had purchased a truck and ordered a fifth wheel. Whether the fifth wheel was to be installed on that truck, or on some other truck, or was to be kept in stock for future sale, Harvester was not informed.

Richardson said that he relied upon Gleason to install a type of fifth wheel on the tractor that would satisfactorily work and perform the service intended. He took delivery of the tractor and the installed fifth wheel about May·1, 1953. After driving it to his farm, he had considerable difficulty in getting it coupled to a trailer. The coupling device of the fifth wheel would not lock securely. After six or eight attempts to get it into the position where he thought it was locked, he still had difficulty in "getting the latch" to go into the proper position. However, he got the coupling connected so that it would apparently hold the trailer, and a day or two later, successfully hauled the trailer to Washington, D. C. On his return, the trailer was disconnected and the tractor sent to get a tank load of milk, which Richardson intended to haul to Washington. He backed the tractor under the front end of the tank trailer, and after several attempts to get it locked to the tractor, it appeared to be coupled properly. Not being entirely satisfied, he drove forward twice to test the connection. The tractor dragged the loaded trailer, with brakes applied, a few inches. Still not satisfied, he got out of the tractor, climbed up on the trailer, saw that the "pin" of the trailer was in the locked position in the slot of the fifth wheel, knocked "the catch" or lever holding it in position, and then got back on the tractor. He started his equipment in motion, and when it had gone between 50 to 100 feet, he "felt" the trailer "slip out of its position," and get loose from the tractor. Looking around he saw that the trailer had slipped back a little distance; but had not entirely dropped off the fifth wheel which supported it. He immediately applied his tractor brakes to prevent the trailer from further slipping. However, in a

matter of seconds, the trailer came loose from the coupling, dropped off the fifth wheel, turned over on its side, and spilled a large portion of its load of milk. (The loss of milk and damage to the trailer accounted for the amount of the damages sued for. That amount is not in dispute.)

After the accident, Richardson called Martin's Garage for help. Martin sent over two "wreckers" to right the trailer, and to try to couple it back to the tractor. Martin worked on the coupling device fifteen or twenty minutes, using a hammer and crow bar on the mechanism of the fifth wheel to make the hookup. Finally, the coupling was completed and the tractor and trailer, with the remainder of the milk, were driven to Washington.

On the next day, the trailer was disconnected and Richardson drove his tractor to Gleason's place of business, informed Gleason's employees of the accident, and submitted the fifth wheel for inspection, adjustment, repairs, or whatever they thought necessary.

The fifth wheel was inspected by several officers of Gleason, and its shop foreman and mechanics. They tried to get it to work by the use of crow bars or pinch bars. Vivian Mahanes, head foreman of Gleason's shop, said it was not operating properly, and that he could not get it to work. He testified that the jaws or clamps of the fifth wheel which locked the pin of the trailer to the truck were out of alignment, and that he could not get them in proper position with the equipment in his shop. He did not recall whether he had made an inspection of the wheel when it was first installed. He had no means of making any inspection other than visual. He further said he did not know enough about fifth wheels at the time it was installed to know how to operate one.

Hope Gleason, the manager of Gleason's Truck Sales Department, was present when the wheel was returned, and inspected. He said that while he and his mechanics were not familiar enough to express an opinion about its condition, there was a general feeling that there was something wrong with the wheel because it was not working properly.

Willard Mahanes, the parts foreman, was present at the same time, and he said it was admitted that something was wrong with the wheel, and that it would not operate properly.

Gleason removed the wheel from the tractor, returned it to Harvester, and requested a refund of its purchase price. Thereafter, a new type of fifth wheel, a "Fruehauf" was obtained by Gleason

and mounted upon Richardson's truck by Gleason without cost or charge therefor.

A representative of Harvester stated that the wheel in question was tested by his company upon its return, and found to be free from defects when received by it.

At the beginning of the trial, a new fifth wheel of the type of the one in question was exhibited to the court. Its operation and functions were explained by R. B. Small, a representative of Harvester, who said that when the pins and levers used in the coupling were in their proper positions, the coupling device would automatically lock itself, and the connection would not come loose. He said that the jaws of the wheel were so built that they could have been put in perfect alignment by reducing the pressure of the springs or lifting a lever. He thought, however, that the coupling should always be checked to make sure that the connection was complete.

The evidence shows that the truck manufactured by Harvester was a complete tractor reasonably fitted for the purpose for which it was sold; that there was no claim by Richardson or Gleason that it was in anywise defective or unfit for its general purposes; and that the fifth wheel was neither manufactured by nor installed by Harvester. Harvester did not know Richardson in the transaction, nor what particular use was to be made of the fifth wheel. There is no evidence that a defect, if any, in the fifth wheel, either in its construction or operation, could have been discovered by Harvester upon a reasonable inspection. It was in no manner responsible for the installation on the tractor by Gleason.

It will be remembered that Richardson did not assign cross-error to the ruling of the court in striking the evidence as to Harvester. Therefore, that ruling is binding upon him. Rule of Court 5:1 (4). Gleason does not in its answer assert any claim against Harvester for breach of warranty or for negligence. On the other hand, its answer sets out the following:

"This defendant (Gleason) further denies that said 'fifth wheel' was in any way defective at the time it was sold to the plaintiff and this defendant states that said 'fifth wheel' was properly installed by its employees and was in proper adjustment when the plaintiff took delivery."

The evidence shows that Richardson took reasonable care and precaution to see that the coupling device was locked so that the

connection of the tractor to the trailer was completed. It shows that the fifth wheel was defective in operation; that the cause of the defect could have been discovered by Gleason by reasonable inspection, and that inspection was omitted.

While Small testified that the device locked itself when the connection was properly made, and that when locked it could not become uncoupled, the facts disclose it did become loose despite the precaution taken by Richardson to see that the mechanism of the device was in correct position, and in so doing caused the damage complained of.

It is manifest from all of the circumstances of the case that Richardson relied upon Gleason to furnish a fifth wheel suitable for the purposes intended, and an implied warranty to that effect resulted. *Universal Motor Co.* v. *Snow*, 149 Va. 690, 699, 140 S. E. 653, 59 A. L. R. 1174, Cf. *Gerst* v. *Jones & Co.*, 32 Gratt. (73 Va.) 518, *Colonna* v. *Rosedale Dairy Co.*, 116 Va. 314, 186 S. E. 94; *Standard Paint Co.* v. *Vietor & Co.*, 120 Va. 595, 91 S. E. 752; *Greenland Development Corp.* v. *Allied Heating Products Co.*, 184 Va. 588, 35 S. E. (2d) 801, 164 A. L. R. 1312; and *E. I. duPont de Nemours & Co.* v. *Universal Moulded Products Corp.*, 191 Va. 525, 62 S. E. (2d) 233.

So far as Harvester is concerned, want of privity of contract with Richardson is a complete defense to the charge that it was guilty of the breach of an implied warranty. Gleason, nevertheless, contends that privity of contract is not essential to liability for negligence, and that Harvester, under the circumtsances, was liable to Richardson, the ultimate vendee, for negligently putting on the market a defective product. In support of its contention, it relies on the principles stated in *MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916, 696, Ann. Cas. 1916C, 440, and other cases and authorities approving the doctrine therein enunciated.

In the *MacPherson* case, the the manufacturer of an automobile, the Buick Motor Company, was held liable to a vendee who purchased one of its automobiles from a retail dealer for injuries caused when a wheel of the car suddenly collapsed and injured the vendee. The wheel was not made by the Buick Motor Company; but was bought from another manufacturer. The wheel, made of wood, had a defect which could have been discovered by reasonable inspection, and that inspection was omitted. It was a necessary part

of a finished product, which Buick sold as a complete automobile. The gist of the action was the negligence of Buick in failing to exercise the duty of care and vigilance it owed to the vendee.

The facts in the case before us are distinguishable from those in the *MacPherson* case, *supra*. Here, Harvester has not been shown to be guilty of any negligence. It manufactured a truck complete in every way as a tractor. The tractor was reasonably fitted for the purpose for which it was sold, and there has been no claim that it was in any part or way defective, or not fitted for its general purposes. The fifth wheel was one of a number of types of devices of like nature, which was selected by Gleason to be installed as an accessory on the tractor. There was no allegation or proof of any actual knowledge of any defect in the fifth wheel on the part of Harvester, or that it could have discovered the defect by reasonable inspection, or that any element of warranty or representation by it entered into its sale. On the other hand, there is no evidence that the fifth wheel was in any way defective at the time it was delivered to Gleason for installation on Richardson's tractor. It was only shown to be defective in operation after installation by Gleason's employees.

There is a conflict of authority as to the extent of the principle enunciated in the *MacPherson* case, *supra*. Beginning with that decision, the courts have recently enlarged the liability of the manufacturer to a remote vendee to include articles not inherently dangerous and not dangerous when properly constructed and put to their intended use, which if defectively constructed may reasonably be anticipated to cause injury to those properly using them. The extension of those principles is fully discussed in *Carter* v. *Yardley & Co.*, 319 Mass. 92, 64 N. E. (2d) 693, 164 A. L. R. 559, and in the annotation following that case.

See also *General Motors Corp.* v. *Johnson*, 137 F. (2d) 320; *Robey* v. *Richmond Coca-Cola Bottling Works*, 192 Va. 192, 64 S. E. (2d) 723; 46 Am. Jur., Sales, §§ 307 and 812, and 1954 Cumulative Supplement thereto.

It is not necessary, in view of the facts here before us, that we now decide whether the modern rule should prevail in this jurisdiction. Gleason, in its pleading, absolved Harvester from liability for breach of contract; and both it and Richardson failed to prove that Harvester was guilty of negligence which was the proximate cause of the injuries suffered by Richardson.

■ The evidence was, we think, sufficient to justify the finding of the trial court that the installed fifth wheel was not reasonably fit for the purpose for which it was sold to be used, and that Harvester was neither negligent nor guilty of a breach of contract. There was no duty on Harvester to supervise the installation of the fifth wheel, or to inspect it after installation. That duty was on Gleason which made the installation. Nor do we find any evidence that Richardson was guilty of negligence in his attempted use of the fifth wheel.

For the foregoing reasons the judgment of the trial court is affirmed.

*Affirmed.*