## 𝔖taunton

### Ross Harris v. Hampton Roads Tractor & Equipment Company.

September 8, 1961.

Record No. 5263.

Present, All the Justices.

The opinion states the case.

*Howard I. Legum* (*Louis B. Fine; Fine, Fine, Legum & Schwan,* on brief), for the plaintiff in error.

*James M. Pickrell* (*Kellam & Kellam,* on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Ross Harris instituted an action at law against Hampton Roads Tractor & Equipment Company, a corporation, for damages resulting from injuries he sustained while operating a crane with a tagline attached to the boom which the corporation had sold to his employer, Higgerson-Buchanan, Inc. The motion for judgment alleged that defendant negligently installed the tagline, and that it breached its implied warranty that the crane and tagline were fit for the purposes for which they were bought. At the conclusion of all the evidence defendant renewed its motion to strike plaintiff's evidence originally made when plaintiff rested. The motion was granted as to implied warranty, and the case was submitted to the jury on the question of negligence. A verdict was returned for defendant. Plaintiff's motion to set aside the verdict as being contrary to the law and the evidence and grant him a new trial, and because a juror conversed with a witness for defendant at a luncheon recess was overruled, and judgment was entered on the verdict.

The litigants will be referred to at times as plaintiff and defendant in accordance with their respective positions in the court below.

Plaintiff's assignments of error challenge the correctness of the court's rulings in entering summary judgment for defendant on the implied warranty counts; in granting and refusing certain instructions; and in refusing to set aside the verdict as being contrary to the law

and the evidence and award a new trial, and because of the conversation had between a witness for defendant and a juror.

Defendant, who was a dealer, sold to Higgerson-Buchanan, Inc., a Model 25 Northwest crane, which was manufactured by Northwest Engineering Co., and a "Rud-O-Matic" tagline which was manufactured by another concern. This tagline is an accessory for installation preferably on the crane's boom and weighs approximately 200 pounds. It has a spring reel from which a cable 5/16ths of an inch in diameter passes through two pulleys or sheaves and is fastened to the "clambucket"; this particular "clambucket" weighed 1600 pounds. The function of a tagline is to prevent the "clambucket" from swinging or turning.

On or about March 16, 1957, the crane arrived at Lee Hall, Virginia, from the factory on a railroad flat car. Defendant's employees assembled the boom, attached to it the tagline which they brought with them, removed the crane from the car, and later it was delivered to the purchaser, plaintiff's employer.

Instructions for installation of the Rud-O-Matic tagline furnished by the manufacturer state that when the tagline is installed on the boom, it should be placed preferably "with the wheel on the opposite side of the operator so as not to obstruct his vision." The crane in question was operated from the right side of the boom, and the evidence is conflicting as to whether the tagline was installed on the operator's side of the boom or on the side opposite him.

On September 14, 1957, plaintiff hauled the crane on a trailer to Lee Hall to unload a gondola car of stone. When he raised the boom and "pulled" on the tagline the cable attached to the "clambucket" snapped and struck him in his left eye which was later removed.

Plaintiff had operated various types of cranes, including "Northwest", for about sixteen years. He was in charge of the crane. Among his duties were to lubricate the machine and to replace cables when necessary. The cable involved in the accident was at the time on the operator's side of the boom and had been a part of the tagline since delivery in March 1957. Plaintiff estimated the crane had forty to sixty hours of actual use a week for three months. He testified that wear usually causes a cable to break. Several weeks prior to the accident the crane and tagline were used to unload 150 gondola cars of stone. During the operation the cable would usually hit the edge of the cars and move "back and forth". Testimony varied as to the average life of a 5/16-inch cable under normal conditions. Plaintiff's witnesses stated that such a cable should render 1,000 hours or more

of service. On the other hand witnesses for defendant said 120 hours; from 5 to 6 weeks; "a month or two, and they can break in five minutes", depending on the operator. There was evidence that the pulleys or sheaves through which the cable ran were badly worn which would cause the cable to wear. According to R. M. Bowden, an expert witness for plaintiff, taglines should be oiled or greased daily when in use, and during that process the condition of the pulleys can readily be observed.

Bowden said a tagline should be mounted on the side of the boom opposite the operator "as a safety precaution so that in case the cable breaks it would not come back and hit the operator." A. F. Kleever entertained the same view. A number of expert witnesses for defendant stated that it was proper to install the tagline on either side of the boom. L. W. Puglisi estimated that ninety per cent of the cranes he had seen had the tagline mounted on the operator's side of the boom. Plaintiff testified he had operated cranes before and after the accident with taglines mounted on the operator's side. He said "it is customary to fasten it on either side."

We shall consider first whether the trial court erred in striking plaintiff's evidence as to the implied warranty counts because there was no privity of contract between the litigants.

While there is authority to the contrary, the prevailing view, subject to some exceptions and qualifications, is that there can be no recovery against the manufacturer or seller of a product alleged to have caused the injury, on the theory of breach of warranty, where there is no privity of contract between the injured party and the manufacturer or seller. See Annotation, 75 A. L. R. 2d, 39 *et seq.*

In the recent case of *Wyatt v. North Carolina Equipment Company*, 253 N. C. 355, 117 S. E. 2d 21, the question of privity of contract was involved. There Wyatt, the operator of a dirt loader, which was sold to his employer, Neal Hawkins Construction Company, by the defendant who was a dealer, was thrown on the hood of the machine and was seriously injured by the arms of the scoop when the loader tipped forward while he was backing it with the scoop of the loader off the ground. In his action against defendant he alleged negligence and breach of warranty. Defendant's demurrer was sustained, and on appeal the judgment of the trial court was affirmed. The court said:

"A warranty, express or implied, is contractural in nature. Whether considered collateral thereto or an integral part thereof, a warranty is

an element of a contract of sale. 77 C. J. S. Sales § 302; 46 Am. Jur., Sales § 299.

*    *    *    *    *    *    *

" 'Subject to some exceptions and qualifications, it is a general rule that only a person in privity with the warrantor may recover on the warranty.' 77 C. J. S. Sales § 305(b); 46 Am. Jur., Sales § 306.

"* * * Absent privity of contract, there can be no recovery for breach of warranty except in those cases where the warranty is addressed to an ultimate consumer or user. Ordinarily, the rule that a seller is not liable for breach of warranty to a stranger to the contract of warranty is applicable to an employee of the buyer. *Berger* v. *Standard Oil Co.*, 126 Ky. 155, 103 S. W. 245, 11 L. R. A., N. S., 238. Negligence is the basis of liability of a seller to a stranger to the contract of warranty." (Citing cases.) 253 N. C. at page 359, 117 S. E. 2d at page 24.

*Gleason & Co.* v. *International Harvester Co., et al.*, 197 Va. 255, 88 S. E. 2d 904, involved an alleged warranty of a coupling device, known as a fifth wheel, which is designed for use in fastening a trailer to a tractor. Richardson, the plaintiff, purchased an International tractor-type truck from Gleason, an independent dealer. At the same time he ordered from Gleason a fifth wheel and relied on him to select and install it. Gleason obtained the fifth wheel from a branch office of Harvester, which had purchased it from another manufacturer. A milk-tank trailer which the tractor was pulling became uncoupled because of the defective condition of the fifth wheel, turned over and spilled a large quantity of its load of milk.

Richardson instituted action against Gleason and Harvester for damage to the trailer and for loss of milk. He alleged breach of implied warranty and negligence. We held that want of privity of contract between Richardson and Harvester was a complete defense to the charge that Harvester was guilty of the breach of an implied warranty. We also held that the evidence failed to show that Harvester was guilty of negligence which was the proximate cause of Richardson's damages.

In *Swift and Company* v. *Wells*, 201 Va. 213, 110 S. E. 2d 203, we held: "* * * [W]here a manufacturer of food for human consumption sells such food, in sealed containers or packages, to a retailer, who in turn sells it to a consumer, and the consumer upon eating it suffers damage in consequence of impurities in the product, shown to have existed therein before it left the manufacturer's hands, the manu-

facturer is liable to the consumer on its implied warranty of wholesomeness of the food, and the consumer may recover against the manufacturer for damages suffered, irrespective of a lack of privity of contract between the manufacturer and the consumer." 201 Va. page 221.

We said that the facts in the *Gleason* case, *supra*, are wholly different from those involved in the *Swift* case, and made the following observation: "The statement in the opinion in that [Gleason] case, by the author of this opinion, that 'So far as Harvester is concerned, want of privity of contract with Richardson is a complete defense to the charge that it was guilty of the breach of an implied warranty,' was too broad, general, and unnecessary in the decision of the case. The rule applying to the sale of foodstuffs was not considered in the briefs, the argument, or the opinion." From that statement plaintiff here argues that the clear inference is that a contrary result would have been reached in the *Gleason* case if the rule applying to foodstuffs had been considered. We find no merit in this contention. It merely means the statement was too broad and general in that want of privity of contract is not a complete defense in the sale of certain foodstuffs. We applied an exception to the general rule in the *Swift* case.

Plaintiff relies heavily on the recent case of *Henningsen* v. *Bloomfield Motors, Inc.*, 32 N. J. 358, 161 A. 2d 69, 75 A. L. R. 2d 1, in support of his contention that privity of contract is not an essential requirement for recovery on the theory of implied warranty in non-food cases. That case does support his position, but it is not in accord with the majority view or our prior holding in the *Gleason* case.

In the present case there was no breach of an implied warranty as alleged in the motion for judgment. There was no privity of contract between plaintiff and defendant, which is required for recovery on the sale of products such as are here involved, on the theory of implied warranty. Consequently, an implied warranty did not exist between the litigants. We find that the trial court properly struck plaintiff's evidence as to the implied warranty counts in his motion for judgment. See *Odom* v. *Ford Motor Company*, 230 S. C. 320, 95 S. E. 2d 601; *Wood* v. *General Electric Co.*, 159 Ohio St. 273, 112 N. E. 2d 8.

Plaintiff contends that the court erred by granting Instructions D-8, D-9 and D-13.

Instruction D-8 was based on the assumption of risk doctrine. Instruction D-9 told the jury that it was plaintiff's duty to use ordinary care for his own safety and defined ordinary care; that if he failed

to exercise such care, he was guilty of negligence, and that if such negligence proximately contributed to the accident, they must find for defendant. There was sufficient evidence to support both instructions, and we find no prejudicial error in their form.

Instruction D-13 reads as follows:

"The Court instructs the Jury that the defendant was only required to exercise ordinary care in mounting the tagline on the boom of the crane in question, which is that degree of care an ordinary prudent person would exercise under the circumstances, then existing, and if you shall believe from the evidence that the general custom of mounting taglines on the boom of cranes in the construction industry is on either side of the boom, regardless of the position of the operator, and without wood blocks, then this evidence may be considered by the Jury, along with all of the other evidence in the case, in determining whether or not the defendant was guilty of negligence in mounting the tagline with the wheel either on the right side or the left side of the boom, and without wood blocks; and if the Jury believe from all of the evidence that the defendant was not guilty of negligence in mounting said tagline, then they should find for the defendant."

Plaintiff objected and excepted to this instruction on the grounds that it singled out evidence by referring to the general custom in the construction industry of mounting taglines, with or without wooden blocks; that the test does not limit itself to the general custom in the industry as to "Northwest" 25 cranes; that the evidence was not sufficient to show any general custom in the construction industry "as to mounting of taglines on either side, nor as to wood blocks."

The motion for judgment charged that defendant negligently installed the tagline on the crane. Plaintiff was first to introduce evidence as to the general custom in the construction industry for installing taglines with relation to the side of the boom on which the operator sits. Plaintiff's witnesses testified defendant should have placed wood blocks between the tagline and the boom when the tagline was bolted to the boom so as to prevent slipping. Defendant's witnesses said it was proper to mount the tagline without wood blocks. The jury were told they may consider the general custom in the construction industry. They were not told that if the general custom was followed, defendant was not negligent. The evidence was sufficient to show a general custom in the construction industry for mounting taglines on either side of the boom, regardless of the operator's position, and without wood blocks. On the record before us, we find no reversible error in granting this instruction.

■ We turn next to the question of whether the court erred in refusing to grant a new trial because of the conversation between defendant's witness, John C. Robertson, secretary-treasurer of defendant corporation, and Lamar W. Foley, a juror.

Three days after the verdict plaintiff filed a motion for a new trial on the ground that Robertson had conversed with Foley during a luncheon recess while the trial was in progress. A hearing on the motion was had on June 17, 1960. Both Robertson and Foley were thoroughly examined as to the nature of their conversation. Their testimony revealed that they had never seen one another before they talked outside of the courtroom in plain view of witnesses and jurors, while waiting for court to reconvene; that Robertson instigated the conversation which was conceived in innocence, casual and foreign to the case under consideration and lasted about five minutes.

In *Dozier* v. *Morrisette*, 198 Va. 37, 40, 92 S. E. 2d 366, it was said:

"We are mindful of the rule that generally the testimony of jurors is inadmissible to impeach their verdict and that exceptions to the rule are rare. *Danville Bank* v. *Waddill's Adm'r.*, 31 Gratt. (72 Va.) 469; *Manor* v. *Hindman*, 123 Va. 767, 97 S. E. 332; 19 M. J., Verdict, § 34, pp. 524, 525. We, however, subscribe to the exception that private communications, possibly prejudicial, between jurors and third parties, are forbidden and invalidate the verdict unless their harmlessness is made to appear. *Pitchford* v. *Commonwealth*, 135 Va. 654, 668, 115 S. E. 707; *Kearns* v. *Hall, supra; Mattox* v. *United States*, 146 U. S. 140, 150, 13 S. Ct., pp. 50, 53, 36 L. ed. 917, 921." See also *City of New York Ins. Co.* v. *Greene*, 183 Va. 35, 41, 31 S. E. 2d 268, 270; 52 A. L. R. 2d 182, 185.

It is well settled in this jurisdiction that a motion for a new trial on the ground of misconduct of a jury is addressed to the sound discretion of the trial court and its discretion should not be disturbed on appeal unless it was abused. *Kearns* v. *Hall*, 197 Va. 736, 740, 91 S. E. 2d 648; *Borland* v. *Barrett*, 76 Va. 128, 138; 13 M. J., New Trials, § 10, p. 625.

Here the trial court properly conducted the hearing on the motion. It saw and heard the parties involved testify and concluded that their conduct could not reasonably have affected the verdict. The harmlessness of the incident was made to appear and the motion for a new trial was overruled. We cannot say from this record that the trial court abused the discretion with which it was empowered.

Our conclusion is that there was ample credible evidence to support the jury's verdict for defendant, and that there was no prejudicial error committed during the trial of the case.

For the reasons given, the judgment appealed from is

*Affirmed.*