## CIRCUIT COURT OF THE CITY OF NORFOLK

William Atkinson
and Etta Brunell

    v.

Penske Logistics,
L.L.C., et al.

Case No. (Chancery) 01-2206

BY JUDGE JOHN C. MORRISON, JR.

February 19, 2003

This issue comes before the Court on Plaintiffs' Motion for Declaratory Judgment. This case involves multiple insurance policies. On October 24, 2002, this Court presided over the trial between Plaintiffs William Atkinson and Etta Brunell and Defendants Penske Logistics, L.L.C. (formerly Penske Logistics, Inc.[1]) (hereinafter "Penske Logistics"), Penske Truck Leasing Co.,

---

[1] Penske Logistics, Inc., is the predecessor company of Penske Logistics, L.L.C., one of the defendants in this case. The company was named Penske Logistics, Inc., at the time of the accident and is Penske Logistics, L.L.C., at the time of this lawsuit. Joint Stipulation of Facts ¶ 6.

L.P. (hereinafter Penske Truck Leasing"), and Old Republic Insurance Company (hereinafter "Old Republic"). After the trial, the parties submitted briefs. In addition, Plaintiff Atkinson submitted a Motion to Reconsider, Exclude Parol Evidence, and Other Relief, asking the Court to exclude the testimony of George Frazier. For the reasons stated below, the Court finds that the uninsured/underinsured ("UM/UIM") coverage limits under the Old Republic policy are $25,000/person and $50,000/accident for bodily injury and $20,000 per accident for property damage. In addition, the Court grants Plaintiff Atkinson's Motion to Reconsider and excludes the testimony of George Frazier.

On May 19, 2000, Plaintiffs Atkinson and Brunell, employees of Penske Logistics, were operating a tractor-trailer on behalf of their employer. Joint Stipulation of Facts ¶¶ 1-2. The tractor-trailer was principally garaged or used in the Commonwealth of Virginia. *Id.* at ¶ 3. Defendant Penske Truck Leasing owned the tractor and leased it to Penske Logistics. *Id.* at ¶¶ 4-5. Penske Logistics owned the trailer. *Id.* at ¶ 4.

On May 19, 2000, Plaintiff Brunell was operating the tractor-trailer in which Plaintiff Atkinson was a passenger. Plaintiffs were transporting cargo on behalf of their employer. *Id.* at ¶ 7. Both Plaintiffs were injured in an accident and claim that the unknown operator of the other vehicle was at fault. *Id.* Each Plaintiff brought a suit against John Doe alleging that their injuries resulted from the negligence of John Doe. *Id.* at ¶ 8.

The tractor and trailer were covered under a motor vehicle liability policy, policy number ML 14804-06, issued by Defendant Old Republic to Defendants Penske Truck Leasing and Penske Logistics. *Id.* at ¶ 9. As permissive users, Plaintiffs are entitled to uninsured/ underinsured motorist coverage under that policy. *Id.* at ¶ 10. Both Plaintiffs qualify as insureds under that policy. *Id.* at ¶ 11.

Although there are several insurance policies at issue in this case, the trial on October 24, 2002, involved only the Old Republic policy identified above. Plaintiffs contend that the UM/UIM limit of the Old Republic policy is $2,000,000. Pl.'s 1st Am. Mot. for Declaratory J. ¶ 22. Defendants deny this contention and assert that the UM/UIM coverage limits are equal to Virginia's minimum financial responsibility limits of $25,000/person and $50,000/accident. Def. Old Republic Ins. Co.'s Answer ¶ 36. The Court finds that the UM/UIM limits of the Old Republic policy are $25,000 per person/$50,000 per accident for bodily injuries and $20,000 per accident for property damage.

## I. *Discussion*

### A. *Burden of Proof: Insurance Coverage*

In *Maryland Casualty Co. v. Cole*, the Virginia Supreme Court held that "[t]he burden is on the policyholder to bring himself within the policy." 156 Va. 707, 716, 158 S.E. 873, 876 (1931); *see also Erie Ins. Exch. v. Meeks*, 223 Va. 287, 290-91, 288 S.E.2d 454, 456-57 (1982). "It is elemental that a plaintiff must prove a *prima facie* case." *Meeks*, 223 Va. at 291, 288 S.E.2d at 456. Only then does the burden shift to the defendant insurance company to prove its affirmative defense. *Id.* at 291, 288 S.E.2d at 457; *see also Commercial Underwriters Ins. Co. v. Hunt & Calderone*, 261 Va. 38, 42, 540 S.E.2d 491, 493 (2001) ("The burden of proving the affirmative defense of materiality of a misrepresentation is on the insurance company."); *City of N.Y. Ins. Co. v. Greene*, 183 Va. 35, 39, 31 S.E.2d 268, 270 (1944) (holding that fraud or coercion is an affirmative defense that the insurance company must prove by clear and convincing evidence); *Aetna Ins. Co. v. Carpenter*, 170 Va. 312, 324, 196 S.E. 641, 646 (1938) (same).

In this case, Plaintiffs have met their burden to bring themselves within the policy. The parties have stipulated that the tractor and trailer were covered under a motor vehicle liability policy, policy number ML 14804-06, issued by Old Republic to Penske Truck Leasing and Penske Logistics. Joint Stipulation of Facts ¶ 9. The parties have also stipulated that Plaintiffs were permissive users and, therefore, that Plaintiffs are entitled to UM/UIM coverage under the policy. *Id.* at ¶ 10. The parties have further stipulated that the Plaintiffs qualify as insureds under that policy. *Id.* at ¶ 11. The only question before the Court is the amount of UM/UIM coverage available to Plaintiffs.

### B. *Penske Truck Leasing's Rejection of Higher UM Limits is Binding on Penske Logistics*

The Code of Virginia provides that UM/UIM coverage limits "shall equal but not exceed the limits of the liability insurance provided by the policy, unless *any one named insured* rejects the additional uninsured motorist insurance coverage by notifying the insurer as provided in subsection B of § 38.2-2202." Va. Code § 38.2-2206(A) (2001) (emphasis added). "This rejection of the additional uninsured motorist insurance coverage by any one named insured shall be binding upon all insureds under such policy as defined in subsection B of this section." *Id.* Subsection B provides the following definition:

> "Insured" as used in subsections A, D, G, and H of this section means the named insured and, while resident of the same household, the spouse of the named insured, and relatives, wards, or foster children of either, while in a motor vehicle or otherwise, and any person who uses the motor vehicle to which the policy applies, with the express or implied consent of the named insured, and a guest in the motor vehicle to which the policy applies or the personal representative of any of the above.

Va. Code § 38.2-2206(B) (2001).

Under the provisions of this statute, rejection of the higher limits by one named insured is binding on all named insureds and all other insureds as defined in § 38.2-2206(B). Section 38.2-2202 of the Code of Virginia outlines the requirements for rejecting the higher level of UM/UIM coverage. *See* Va. Code § 38.2-2202(A) (2001). All parties have acknowledged that Penske Truck Leasing complied with the requirements of § 38.2-2202. Pls.' Trial Br., at 10; Defs.' Trial Br., at 13. The parties have also stipulated that Penske Logistics is a named insured. Joint Stipulation of Facts ¶ 9; *see also* Pl.'s Trial Br., at 10-11. Penske Truck Leasing effectively rejected the $1,000,000 limits on behalf of itself and Penske Logistics, as well as the other Penske companies that are named insureds under the Old Republic policy.

Plaintiffs argue that Penske Logistics is entitled to statutory protection because it is a separate company insuring a separate vehicle. Pl.'s Trial Br., at 10. Plaintiffs claim that Penske Logistics is entitled to separate notice, which it did not receive. In addition, it must separately waive the higher limits, which it did not do. *Id.* at 11.

In *State Farm Mutual Auto. Ins. Co. v. Weisman*, the Supreme Court of Virginia construed an earlier version of § 38.2-2206(A) to require that each named insured under an automobile insurance policy reject the higher coverage. 247 Va. 199, 203, 441 S.E.2d 16, 19 (1994). The Virginia legislature then changed the statute to its present form, making it clear that the legislature intended for a rejection by one named insured to be binding on all insureds, named or otherwise. Plaintiff asserts that the amendment makes the rejection of higher UM/UIM limits binding on other insureds only in a family policy. Pl.'s Trial Br., at 12. Plaintiff relies on the following language in § 38.2-2206(A): "This rejection of the additional uninsured motorist insurance coverage by any one named insured shall be binding upon all insureds under such policy *as defined in subsection B of this section.*" Va. Code § 38.2-2206(A) (2001) (emphasis added). However, subsection B provides *first* that " 'insured' means *the named insured and. . . .*" Va. Code

§ 38.2-2206(B) (2001). Penske Logistics is a named insured and is, therefore, included in subsection B's definition of "insured."

C. *Testimony of Mr. George Frazier*

At trial, the Court permitted George Frazier to testify. George Frazier is the Vice President of Insurance Risk Management for Penske Truck Leasing. Testimony of George Frazier, October 24, 2002, at 4 [hereinafter "Tr."]. Mr. Frazier is also the Vice President of Risk Insurance Management for Penske Logistics. Tr. at 5. Mr. Frazier holds similar positions with similar or identical titles in many of Penske's various companies and performs essentially the same services for all of these companies. *Id.*

Mr. Frazier testified that, on all occasions, he intended to sign insurance documents on behalf of Penske Truck Leasing, Penske Logistics, and all other Penske companies covered under the policy. *Id.* at 17, 19-21. Mr. Frazier signed the forms rejecting higher UM/UIM limits, including the form applicable to the policy in effect at the time of the accident, as "George Frazier" in the capacity of Vice President of Penske Truck Leasing. *Id.* at 36-41, 45; Def. Exs. 2, 6, 8, 10, 12, and 16. The name, "Penske Logistics," never appears on any of the rejection forms. Tr., at 46. In two forms, dated December 18, 1998, and December 20, 1997, respectively, Mr. Frazier signed the forms as "Vice President" without specifying the company for whose benefit he signed the form. Def. Exs. 3 and 4.

Plaintiff objected to George Frazier's testimony on the ground that it is inadmissible parol evidence. Tr. at 10-15, 18, and 20; Pl. Atkinson's Mot. to Reconsider, Exclude Parol Evidence, and Other Relief [hereinafter "Pl. Atkinson's Mot. to Reconsider"]. Plaintiff also objected to Mr. Frazier's testimony because Defendants failed to plead that Penske Logistics rejected the higher limits on its own behalf. Pl. Atkinson's Mot. to Reconsider, at 3 ¶¶ 12-15.

"Every litigant is entitled to be told by his adversary in plain and explicit language what is his ground of complaint or defense. . . . The issues in a case are made by the pleadings, and not by the testimony of witnesses or other evidence." *Ted Lansing Supply Co. v. Royal Aluminum & Constr. Co.*, 221 Va. 1139, 1141, 277 S.E.2d 228, 230 (1981). "It is firmly established that no court can base its judgment or decree upon facts not alleged or upon a right which has not been pleaded or claimed." *Id.* at 1141, 277 S.E.2d at 229 (citing *Potts v. Mathieson Alkali Works*, 165 Va. 196, 207, 181 S.E. 521, 525 (1935)). "The purpose of a defensive pleading is to inform the opposite party, and to permit the court to determine, what is the true nature of the defense.

Unless this purpose is achieved, such a pleading is not sufficient at law." *Lumbermen's Mut. Cas. Co. v. Hodge*, 205 Va. 36, 39, 135 S.E.2d 187, 189 (1964); *see also Balzer & Assocs., Inc. v. Lakes on 360, Inc.*, 250 Va. 527, 531, 463 S.E.2d 453, 456 (1995).

Defendants pleaded the following in their Answer: "It is affirmatively alleged that the named insured Penske Truck Leasing Co., L.P.'s selected uninsured/underinsured motorist bodily injury coverage equal to Virginia's minimum financial responsibility limits of $25,000 per person/$50,000 per accident." Def. Old Republic's Answer ¶ 36; Defs. Penske Truck Leasing and Penske Logistics's Answer ¶ 36 [hereinafter "Defs.' Answers"]. Defendants also pleaded: "It is affirmatively alleged that the named insured Penske Truck Leasing Co., L.P., effectively rejected uninsured/underinsured motorist coverage for bodily injury equal to its liability coverage pursuant to the applicable provisions of the Code of Virginia." Defs.' Answers ¶ 38. In addition, Defendants specifically denied Plaintiffs' charge that the UM/UIM limits were $2,000,000.

A pleading should state facts, not law. *Shumaker's Adm'x v. Atlantic Coastline RR.*, 125 Va. 393, 396, 99 S.E. 739, 739 (1919).

> It is never necessary to plead any matter of law of which the court will take judicial notice. It is the function of the pleading to state facts and not law. Our courts take judicial notice of the public acts of Congress as well as those of the State, and will apply each as appropriate.

*Id.* at 396, 99 S.E. at 739-40. Defendants never notified Plaintiffs or the Court that Mr. Frazier had signed the waiver form on behalf of Penske Logistics as well as Penske Truck Leasing. Defendants *affirmatively alleged* that Penske Truck Leasing rejected the higher limits and selected Virginia's minimum financial responsibility limits. Defs.' Answers ¶¶ 36, 38. In order to claim during the trial that Penske Logistics rejected the higher limits and selected Virginia's minimum financial responsibility limits, Defendants should have included that allegation in their pleading. Therefore, the Court does not consider Mr. Frazier's testimony that he signed the rejection form in his capacity as Vice President of Penske Logistics on behalf of Penske Logistics. Because of this decision, it is unnecessary for the Court to consider whether Mr. Frazier's testimony was inadmissible parol evidence.

D. *Endorsements # 95 and # 111*

Endorsement # 95 of the insurance policy sets the UM/UIM bodily injury limits at $20,000 per person/$40,000 per accident and the UM/UIM property damage limits at $10,000 per accident. Trial Ex. A, at Endorsement # 95. These limits are less than the mandatory minimum bodily injury limits of $25,000/person and $50,000/accident and property damage limit of $20,000/accident required by §§ 46.2-462 and 38.2-2206 of the Code of Virginia. Plaintiff asserts that this provision of the policy is void and that the UM/UIM limits are, therefore, equal to the liability limits of $1,000,000. Pls.' Trial Br., at 3. "Each provision of the Virginia motor vehicle statute 'is as much a part of the policy as if incorporated therein'." *Bray v. Ins. Co. of Pa.*, 917 F.2d 130, 132 (1990) (quoting *State Farm Mut. Auto. Ins. Co. v. Duncan*, 203 Va. 440, 443, 125 S.E.2d 154, 157 (1962)). Plaintiffs claim that the following language is incorporated into the Old Republic policy: "Those limits shall equal but not exceed the limits of the liability insurance provided by the policy." Va. Code § 38.2-2206(A) (2001).

Defendants argue that Endorsement # 111 alters the provisions of Endorsement # 95. Defs.' Trial Br., at 33. The title of Endorsement # 111 is "Financial Responsibility — Virginia." The endorsement states, "It is hereby agreed that Coverage afforded under this policy will meet the minimum financial responsibility requirements for any vehicle garaged in the state of Virginia." Defs.' Ex. A, at Endorsement # 111. Defendants argue that this endorsement "sets a floor or minimum level of coverage below which the Policy's limits of liability will never be permitted to go, namely Virginia's minimum financial responsibility limits of $25,000 per person/$50,000 per accident enunciated in Code § 46.2-472." Defs.' Trial Br., at 33.

Insurance policies are contracts whose terms must be interpreted in accordance with general principles of construction. *Dairyland Ins. Co. v. Douthat*, 248 Va. 627, 630, 449 S.E.2d 799, 801 (1994). The words and phrases in an insurance contract should be given their usual and ordinary meaning. *Graphic Arts Mut. Ins. Co. v. C. W. Warthen Co.*, 240 Va. 457, 459, 397 S.E.2d 876, 877 (1990); *London Guar. & Accident Co. v. C. B. White & Bros.*, 188 Va. 195, 204, 49 S.E.2d 254, 259 (1948). Two sections of the policy set the UM/UIM limit at $25,000/$50,000/$20,000. First, Defendants correctly assert that Endorsement # 111 alters the provisions of Endorsement # 95. It is clear that the parties intended for Endorsement # 111 to increase the UM/UIM limits in the event that the law changed. The Court finds that both endorsements are valid and that the limits are $25,000/$50,000/$20,000.

In addition, the rejection form that Mr. Frazier completed on behalf of Penske Truck Leasing clearly sets the UM/UIM limits at $25,000/$50,000/$20,000. *See* Defs.' Ex. A, at "Selection of Limits for Uninsured/Underinsured Motorists Coverage." Selection of Virginia's minimum responsibility limits has been determined to be a sufficient rejection of the higher limits. *Arnold v. Liberty Mut. Ins. Co.*, 866 F. Supp. 955, 959 (1994), *aff'd*, 39 F.3d 1175, 1994 U.S. App. LEXIS 29928, at *9 (1994). Therefore, by selecting the lower limits on its rejection form, Penske Truck Leasing both rejected higher limits of $1,000,000 and validly selected Virginia's minimum financial responsibility limits.

## E. *Stacking*

Two covered autos were involved in the accident in this suit. The definition of "auto" includes the tractor and the semi-trailer involved in the accident. Defs.' Ex. A, at Endorsements # 19 and # 100. Because there are two covered autos, the issue arises as to whether Plaintiffs are limited to $25,000/$50,000/$20,000 limits or may "stack" coverage and increase the limits to $50,000/$100,000/$40,000. For the reasons stated below, the Court finds that the policy in this case does not permit stacking.

The Supreme Court of Virginia has addressed stacking the coverage of a single policy where separate listings existed for each automobile and separate premiums were charged for the automobiles. The Supreme Court has clearly ruled, "[T]he stacking of UM coverage will be permitted unless clear and unambiguous language exists on the face of the policy to prevent such multiple coverage." *Goodville Mut. Cas. Co. v. Borror*, 221 Va. 967, 970, 275 S.E.2d 625, 627 (1981); *see also Cunningham v. Ins. Co. of N. Am.*, 213 Va. 72, 79, 189 S.E.2d 832, 837 (1972); *Lipscombe v. Sec. Ins. Co. of Hartford*, 213 Va. 81, 84, 189 S.E.2d 320, 323 (1972); *Virginia Farm Bureau Mut. Ins. Co. v. Wolfe*, 212 Va. 162, 164, 183 S.E.2d 145, 147 (1971); *Central Sur. & Ins. Corp. v. Elder*, 204 Va. 192, 197-98, 129 S.E.2d 651, 654-55 (1963). The Supreme Court has determined, "When we pay a double premium we expect double coverage." *Cunningham*, 213 Va. at 79, 189 S.E.2d at 837. When there is more than one possible interpretation, there is an ambiguity, and the ambiguity should be resolved against the insurer. *Lipscombe*, 213 Va. at 83-84; 189 S.E.2d at 322-23. The rule that "it takes 'plain, unmistakable language' to prevent 'stacking' in this type of case" arose out of these principles. *Id.*

In *Goodville*, the Supreme Court found that the following language clearly and unambiguously prevented stacking: "Regardless of the number of. . . motor vehicles to which this insurance applies. . . ." 221 Va. at 971, 275

S.E.2d at 628. In this case, Plaintiffs argue that the policy allows stacking because Endorsement # 94 does not clearly prevent stacking. Pls.' Trial Br., at 17-18. Defendants counter that the language in Endorsement # 95 replaces the language in Endorsement # 94 and clearly prevents stacking. Endorsement # 94 provides:

> E. OUR LIMIT OF LIABILITY
> Regardless of the number of *covered autos, insureds,* claims made or motor vehicles involved in the *accident,* the most *we* will pay for all damages resulting from any one *accident* is the limit of UNINSURED MOTORISTS INSURANCE shown in the Schedule or Declarations. However, if more than one *covered auto* is involved in the same *accident,* the limit of UNINSURED MOTORISTS INSURANCE shown in the Schedule or Declarations will apply separately to each of these *covered autos.*

Defs.' Ex. A, at Endorsement # 94 (emphasis in original). Endorsement # 95 provides:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. . . .
>
> Paragraph 1. of OUR LIMIT OF LIABILITY is changed to read:
> 1. Regardless of the number of covered *autos, insureds,* claims made, or vehicles involved in the *accident, our* limit of liability is as follows:
> a. The most *we* will pay for all damages resulting from *bodily injury* to any one person caused by any one *accident* is the limit shown in this endorsement for "each person."
> b. Subject to the limit for "each person," the most *we* will pay for damages resulting from *bodily injury* caused by any one *accident* is the limit shown in this endorsement for "each *accident.*"
> c. If coverage for *property damage* is provided by this insurance, the most *we* will pay for all damages resulting from *property damage* caused by any one *accident* is the limit of *property damage* shown in this endorsement for "each *accident.*"

Defs.' Ex. A, at Endorsement # 95 (emphasis in original).

The clear language of this policy prevents stacking. The language allowing stacking is omitted from the new "Paragraph 1" while the language preventing stacking remains. Therefore, the coverage limits of this policy may not be stacked.

## F. *Unclean Hands*

Both Plaintiffs and Defendants have claimed that the opposing parties should not be permitted to obtain relief in this Court because they have unclean hands. On both sides, the alleged conduct amounts to misconduct during discovery. The unclean hands doctrine is an equitable defense, and it is not the appropriate method to address the alleged actions of the parties during the course of this litigation.

## II. *Conclusion*

In this declaratory judgment action, the Court finds that the UM/UIM coverage limits under the Old Republic policy are $25,000 per person/$50,000 per accident for bodily injury and $20,000 for property damage. Penske Truck Leasing rejected the higher UM/UIM limits. Because Penske Truck Leasing is a named insured, its rejection and subsequent selection of Virginia's minimum financial responsibility limits is binding on the other named insureds, including Penske Logistics.

In addition, the insurance policy expressly prohibits stacking. Virginia follows the rule that stacking is permitted *unless clear and unambiguous language prohibits stacking.* In this case, the policy at issue contained clear and unambiguous language prohibiting stacking. The specific language used has been proclaimed to be clear and unambiguous by the Supreme Court of Virginia. Therefore, the Plaintiffs will not be permitted to stack the coverage provided under the policy.

March 27, 2003

This issue comes before the Court on Plaintiff William Atkinson's Motion to Rehear and Reconsider its letter opinion of February 19, 2003. Plaintiff asserts that the Court's letter opinion ignored several crucial arguments advanced by Plaintiff. The Court denies Plaintiff's Motion to Rehear and Reconsider issues regarding coverage by Old Republic Insurance Company resolved in its letter opinion of February 19, 2003.

Plaintiff also moves the Court to adjudicate the question of coverage owed to the Plaintiff by Defendants State Farm Mutual Automobile Insurance Company (hereinafter "State Farm") and Allstate Insurance Company (hereinafter "Allstate"). Plaintiff Atkinson moves the Court to:

> A. Declare the extent of coverage each carrier owes each plaintiff, determine the total coverage available, and declare the priority of payment between the insurance carriers and each plaintiff. . . .
> C. Declare that State Farm is obligated to provide coverage to William Atkinson in an amount of $50,000.00;
> D. Declare that Allstate is obligated to provide coverage to William Atkinson in an amount of its policy limits, or at least $50,000.00. . . .

Pls.' 1st Am. Mot. for Declaratory J. ¶ 33. Plaintiff claims that he is entitled to coverage under the State Farm policy number 353-9308-E30-46G as a named insured. *Id*. at ¶ 25. He is claiming uninsured/underinsured motorist coverage in the amount of $50,000.00. *Id*. Plaintiff claims that he is entitled to coverage under the Allstate policy number 077895967-0601 as a resident relative of Al Atkinson, William Atkinson's brother. *Id*. at ¶¶ 27-28. He is claiming uninsured/underinsured motorist protection in an amount of at least $50,000.00.

Although Plaintiff Atkinson moves the Court for declaratory judgment on the issue of priority and amount of coverage under the Allstate and State Farm policies, Plaintiff has not alleged an actual controversy. There has been no allegation that a claim has been denied or that a dispute has arisen.

"The purpose of the Declaratory Judgment Act . . . [Va. Code Ann. §§ 8.01-184 through 8.01-191 (2002)] is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor." *Liberty Mut. Ins. Co. v. Bishop*, 211 Va. 414, 418, 177 S.E.2d 519, 522 (1970). "But before an action may be maintained under the Act there must be a justiciable controversy, for the rendering of advisory opinions is not a part of the function of the judiciary in Virginia." *Id*. The authority to enter declaratory judgment is discretionary and must be exercised with great care and caution." *U.S.A.A. Cas. Ins. Co. v. Randolph*, 255 Va. 342, 346, 497 S.E.2d 744, 746 (1998); *see also Treacy v. Smithfield Foods, Inc.*, 256 Va. 97, 103, 500 S.E.2d 503, 506 (1998). "It must appear that there is an 'actual controversy existing between the parties,' based

upon an, 'actual antagonistic assertion and denial of right,' before the application can be entertained and an adjudication made." *City of Fairfax v. Shanklin*, 205 Va. 227, 229, 135 S.E.2d 773, 775 (1964). "As a rule, this authority will not be exercised when some other mode of proceeding is provided." *Randolph*, 255 Va. at 346, 497 S.E.2d at 746 (citing *Bishop*, 211 Va. at 421, 177 S.E.2d at 524). The controversy must be ripe for judicial review, based on present facts rather than speculation. *Reisen v. Aetna Life & Cas.*, 225 Va. 327, 331, 302 S.E.2d 529, 531 (1983).

"When a justiciable controversy exists between two insurance companies as to their obligations under the terms of their respective policies, a declaratory judgment proceeding may be maintained by one of the companies against the other." *Bishop*, 211 Va. at 418, 177 S.E.2d at 522. In this case, there is no justiciable controversy. There has not been a claim under the insurance policies at issue. There has not been any denial of coverage. Therefore, the issue of priority between the Allstate and the State Farm policies is not ripe for adjudication, and declaratory judgment is inappropriate at this time.